Carl Wayne ADKINS, Appellant/Cross–Appellee,

v.

STATE of Tennessee, Appellee/Cross–Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 2, 1994.

Permission to Appeal Dismissed by Supreme Court Aug. 25, 1995.

Debra A. Wall, Clarksville, Jeff Merryman, Indianapolis, IN, for appellant.

Charles W. Burson, Attorney General and Reporter, Nashville, Amy Tarkington, Assistant Attorney General, Nashville, William R. Mooney, Asst. District Attorney General, Jonesborough, for appellee.

## OPINION

WADE, Judge.

The petitioner, Carl Wayne Adkins, appeals a judgment denying his petition for post-conviction relief. The state appeals from that portion of the judgment setting aside the death sentence and granting a new sentencing hearing.

### Procedural Background

On May 22, 1979, the petitioner was convicted of first degree murder and sentenced to death by electrocution. On direct appeal, the Tennessee Supreme Court affirmed the petitioner's conviction but reversed the death sentence and remanded the case for a new sentencing hearing. *State v. Adkins*, 653 S.W.2d 708 (Tenn.1983).

At the re-sentencing hearing held in October of 1984, a jury again imposed the death penalty. Thereafter, the trial court granted the petitioner's motion for a third sentencing hearing because the second jury had been erroneously informed that the first jury had imposed the death penalty. In June of 1985, at the conclusion of the third sentencing hearing, the jury again returned a verdict of death by electrocution. On direct appeal, our supreme court affirmed the petitioner's sentence in 1987. *State v. Adkins*, 725 S.W.2d 660 (Tenn.1987). The United States Supreme Court denied a petition for writ of *certiorari* on June 1, 1987. *Adkins v. Tennessee*, 482 U.S. 909, 107 S.Ct. 2491, 96 L.Ed.2d 383 (1987).

On August 3, 1987, the petitioner filed a *pro se* petition for post-conviction relief challenging both his first degree murder conviction and death sentence. The trial court appointed counsel who, on December 16, 1988, filed an amended petition. Thereafter,

the petitioner filed two separate post-conviction petitions challenging prior convictions for second degree murder and aggravated assault. Judge Jack R. Musick was designated to hear that portion of the petition pertaining to the sentencing phase of the first degree murder conviction. Judge Arden L. Hill was designated to hear the portion of the petition pertaining to the guilt phase of the first degree murder conviction and the petitions pertaining to the second degree murder and aggravated assault convictions. The three petitions were consolidated.

On June 12, 1989, at the conclusion of a full evidentiary hearing, Judge Hill entered an order denying those portions of the petitions challenging the second degree murder conviction, the aggravated assault conviction, and the guilt phase of petitioner's first degree murder trial. Thereafter, Judge Musick conducted an evidentiary hearing on that portion of the post-conviction petition challenging the propriety of the death sentence. On January 28, 1991, Judge Musick filed an order sustaining the post-conviction challenge and granting what would constitute a fourth sentencing hearing.

The petitioner has appealed Judge Hill's refusal to set aside the three convictions. The state has appealed Judge Musick's grant of a new hearing on the death sentence. Counsel presented oral arguments to the Court of Criminal Appeals in June of 1993. The panel included Justice A.A. Birch, then on the Court of Criminal Appeals. On November 2, 1994, after Justice Birch had been appointed to the Tennessee Supreme Court, the case was reassigned for disposition by the remaining members of the panel.

### Decision

We affirm the denial of post-conviction relief as to the second degree murder conviction, the aggravated assault conviction, and the guilt phase of the first degree murder conviction. We affirm the trial court's grant of a new sentencing hearing and remand for that purpose.

### Scope of Review

We are guided in our review by several well-established principles. In post-conviction proceedings, the petitioner must prove the allegations contained in his petition by a preponderance of the evidence. *State v. Kerley,* 820 S.W.2d 753, 755 (Tenn.Crim.App. 1991); *Oliphant v. State,* 806 S.W.2d 215, 218 (Tenn.Crim.App.1991). Findings of fact and conclusions of law made by the trial court are given the weight of a jury verdict; this court is bound by those findings unless the evidence contained in the record preponderates otherwise. *Butler v. State,* 789 S.W.2d 898, 899 (Tenn.1990); *Teague v. State,* 772 S.W.2d 932, 934 (Tenn.Crim.App.1988). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the trial court. Questions concerning the credibility of witnesses and the weight and value to be given their testimony are for resolution by the trial court. *Black v. State,* 794 S.W.2d 752, 755 (Tenn.Crim.App.1990).

Those convictions under collateral attack will be addressed first. The state appeal of the grant of a new sentencing hearing will be considered last.

### I. 1965 SECOND DEGREE MURDER CONVICTION

On September 30, 1965, the petitioner was convicted of second degree murder and sentenced to ten years in the penitentiary. In exchange for the petitioner's waiver of his right to appeal the conviction, the state agreed that the sentence could be served concurrently with an armed robbery conviction for which he also received a sentence of ten years.

The petitioner presents the following five issues for our review:

(1) whether he was denied his right to trial by a fair cross-section of the community;

(2) whether he was denied his right to a fair and impartial jury due to pre-trial publicity;

(3) whether the trial court's instruction impermissibly shifted the burden of proof from the state;

(4) whether the trial court erred in joining all seven co-defendants for trial; and

(5) whether he was denied the right to effective assistance of counsel.

At the conclusion of the evidentiary hearing, the trial court held that the petitioner had waived his first four issues by voluntarily waiving his right to appeal. The trial court also found that counsel effectively represented the petitioner at trial.

As a preliminary matter, the state argues that any consideration of the various issues raised in this post-conviction petition are completely barred by the doctrine of laches. In support of this claim, the state asserts that the petitioner failed to explain this 24-year wait in attacking this conviction; that the court file is no longer available; and that several of the attorneys who represented the other defendants at trial are now deceased.

■ The defense of laches, an affirmative defense, was neither alleged nor considered in the trial court and is raised for the first time on appeal. That cannot be done. *See Stephen C. Parker v. State,* No. 01C01–9008–CR–00188 (Tenn.Crim.App., at Nashville, Feb. 26, 1991), *perm. to appeal denied,* (Tenn.1991); *see also Provident Life & Accident Ins. Co. v. Broome,* 17 Tenn.App. 284, 66 S.W.2d 1041 (1933); *National Acceptance Co. v. Royal Indem. Co.,* 9 Tenn.App. 515 (1929). Moreover, our supreme court has "explicitly reject[ed] any notion that the doctrine of laches can be invoked to deprive [a post-conviction] petitioner of relief that is constitutionally mandated. . . ." *Wills v. State,* 859 S.W.2d 308, 310 (Tenn.1993). Thus, we find that the claim is not barred by laches.

### A

The petitioner contends that his rights under the state and federal constitutions were violated when he was tried by a jury that did not proportionally represent the major population groups of Washington County. More specifically, he alleges a complete absence of women in the venire from which his jury was selected. In response, the state submits that the petitioner waived this issue by failing to object to the jury venire prior to trial and by relinquishing his right to appeal his conviction. The petitioner asserts, however, that the issue is entitled to a merits review because the state failed to plead waiver as an affirmative defense.

Because waiver was considered and applied by the trial court, we will consider its application to this issue. This is the first time the petitioner challenged the composition of the jury. The trial court specifically found that the petitioner had knowingly and voluntarily waived his right to appeal in exchange for concurrent sentences and could not use this petition for post-conviction relief as a substitute for a direct appeal. *See Doyle v. State,* 3 Tenn.Crim.App. 171, 174, 458 S.W.2d 637, 638 (1970).

■ It is fairly obvious that a petitioner could not now raise issues which had been specifically waived with his right to a direct appeal. Because, however, the right to a jury venire representing a fair cross-section of the community was not recognized as a constitutional claim when the petitioner relinquished his right to appeal, this court cannot find that the petitioner "knowingly or understandingly" waived this issue at his submission hearing in 1965. Thus, the plain words of our statute would not appear to support the state's claim of a procedural bar:

**When ground for relief is "previously determined" or "waived."**—(a) A ground for relief is "previously determined" if a court of competent jurisdiction has ruled on the merits after a full and fair hearing.

(b)(1) A ground for relief is "waived" if the petitioner *knowingly and understandingly* failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.

(2) There is a rebuttable presumption that a ground for relief not raised in any such proceeding which was held was waived.

Tenn.Code Ann. § 40–30–112 (emphasis added). *Cf. Brown v. State,* 729 S.W.2d 54, 55 (Mo.Ct.App.1987); *People v. Shields,* 205 A.D.2d 833, 613 N.Y.S.2d 281, 282–83 (N.Y.App.Div. 3 Dept.1994).

■ On the other hand, the entitlement to a jury venire which included a fair cross-section of the community has not been ap-

plied retroactively. In 1968, the United States Supreme Court extended the trial by jury provision of the Sixth Amendment to the states. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S.Ct. 1444, 1447, 20 L.Ed.2d 491 (1968). Several years later, the Supreme Court recognized women as a cognizable and distinctive group in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). But in *Daniel v. Louisiana*, 420 U.S. 31, 32, 95 S.Ct. 704, 705, 42 L.Ed.2d 790 (1975), the Court held the *Taylor* ruling did not merit retroactive application. Because this conviction was in 1965, the petitioner had no constitutional entitlement to a jury venire representative of a fair cross-section of the community.

### B

Next, the petitioner argues that there was a reasonable likelihood that he was denied a fair and impartial jury in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and in violation of Article 1, §§ 8, 9, 16, and 17 and Article II, § 2 of the Tennessee Constitution. Specifically, the petitioner submits that he was prejudiced by the extensive pre-trial publicity his case received in Washington County. The petitioner introduced several newspaper articles as evidence of this claim.

▉▉▉▉ The trial court found this issue had been waived because the petitioner voluntarily surrendered his right to appeal in return for a concurrent sentence. *Cf. Arthur v. State*, 483 S.W.2d 95, 97 (Tenn.1972). In *Burt v. State*, 2 Tenn.Crim.App. 408, 413, 454 S.W.2d 182, 185 (1970), this court held as follows:

> When the constitutional right asserted was as well recognized at the time of the trial as now, and a procedure for asserting it was prescribed, failure to then assert the claimed right upon the trial waives it and prohibits its subsequent assertion in a post conviction proceeding. A defendant should not be permitted to "save back his rights."

That is certainly true if the defendant knows of a possible claim but does not raise it. A petition for post-conviction relief may not be used as a substitute for a direct appeal. *See*

*Doyle v. State*, 3 Tenn.Crim.App. 171, 174, 458 S.W.2d 637, 638 (1970). When the petitioner has exercised his right to a jury trial, been convicted, and then bargained away his right to appeal and challenge the jury, he has "knowingly and understandingly" waived his claim of a biased jury. Tenn.Code Ann. § 40-30-112(b)(1).

▉▉▉▉ More importantly, however, the record reveals that the petitioner was unable to establish that his jury had been tainted by the pre-trial publicity. Whether to change venue because the jury might not be impartial is a matter which addresses itself to the sound discretion of the trial court; the appellate court will not interfere with the exercise of discretion absent clear abuse. *State v. Melson*, 638 S.W.2d 342, 360 (Tenn.1982), *cert. denied*, 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). Factors to consider in changing venue are listed in *State v. Hoover*, 594 S.W.2d 743 (Tenn.Crim.App.1979). Generally, the accused must demonstrate that the jurors who heard the case were biased or prejudiced because of pre-trial publicity. *Id.* at 746; *see also State v. Stapleton*, 638 S.W.2d 850, 856 (Tenn.Crim.App.1982). Prejudice will not be presumed on the mere showing that there was considerable pre-trial publicity. *Dobbert v. Florida*, 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977); *State v. Kyger*, 787 S.W.2d 13, 19 (Tenn.Crim.App.1989). Here, the petitioner failed to demonstrate the kind of bias or prejudice that would have precluded a fair trial.

### C

Next, the petitioner contends that the instructions provided by the trial court unconstitutionally shifted the burden of proof to the petitioner on the element of malice, an element critical to a second degree murder conviction. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The pertinent portions of the instructions were as follows:

> A deadly weapon is an instrument, which from the use made of it at the time, is likely to produce death or to do great bodily harm. By the use of a deadly weapon, *the law presumes malice* sufficient to

sustain a charge of murder in the second degree.

\* \* \* \* \* \*

Before you can convict the defendants it is incumbent on the State to prove to your satisfaction beyond a reasonable doubt that the deceased has been killed in the manner and form as charged, that the killing occurred in Washington County before the finding of the indictment; that the defendants killed him; and that the killing was done in such a manner, and by such means and under such circumstances as would make the defendants guilty under the law of some one of the grades of felonies homicide herein defined and explained to you.

(Emphasis added).

▇▇▇ In *Sandstrom*, the United States Supreme Court held that an instruction creating a presumption of malice that has the effect of shifting the burden of proof to the defendant violates due process of law. 442 U.S. at 523–524. *See State v. Coker*, 746 S.W.2d 167, 170 (Tenn.1987), *cert. denied*, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988). The charge prohibited by *Sandstrom* is, however, subject to harmless error analysis. *See Rose v. Clark*, 478 U.S. 570, 582, 106 S.Ct. 3101, 3108, 92 L.Ed.2d 460 (1986); *State v. Bolin*, 678 S.W.2d 40, 45 (Tenn.1984). And, a threshold question is whether the *Sandstrom* rule may be applied retroactively to this case. If not, the petitioner has no entitlement to relief.

The opinion filed in *Swanson v. State*, 749 S.W.2d 731, 736 (Tenn.1988), has occasionally been cited as authority for retroactive application of the holding in *Sandstrom*.[1] Citing *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), our supreme court noted that "[o]n January 12, 1988, the United States Supreme Court held that *Sandstrom* is to be given retroactive application."

*Swanson*, 749 S.W.2d at 733. In actuality, *Yates* did not address the issue.

▇▇▇ In the landmark decision of *Linkletter v. Walker*, 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965), the United States Supreme Court ruled that there is no set "principle of absolute retroactive invalidity" applicable to convictions under collateral attack. Each case is determined by "the peculiar traits" of the new rule. *State v. Robbins*, 519 S.W.2d 799, 800 (Tenn.1975). Citing *Franklin v. State*, 496 S.W.2d 885 (Tenn.1973), the *Robbins* court used the following test:

> [A] factor which weighs heavily in favor of retroactive application of a new rule is the likelihood that it will enhance the integrity and reliability of the fact-finding process of the trial. A factor which weighs heavily against retroactive application is the prospect that the integrity of the fact-finding process at trial will not be materially enhanced, coupled with the wholesale unsettling of final judgments of conviction.

519 S.W.2d at 801.

In 1989, Justice O'Connor spoke for the United States Supreme Court on the issue of retroactivity in *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334 (1989):

> [R]etroactivity determination would normally entail application of the *Linkletter* standard, but we believe that our approach to retroactivity for cases *on collateral review* requires modification.

(Emphasis added). The Court held that unless cases "fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310, 109 S.Ct. at 1075.

Former Justice Harlan, cited by Justice O'Connor in the *Teague* opinion, had previously written that "new rules should always

---

1. Among the unreported cases by our court citing *Swanson* and *Yates* as authority for the retroactive application of *Sandstrom* are *Marion Douglas Smith v. State*, No. 1318, 1990 WL 192694 (Tenn.Crim.App., at Knoxville, December 5, 1990), *perm. to appeal denied*, (Tenn.1991); *State v. Randall R. Farmer*, No. 1264, 1990 WL

91130 (Tenn.Crim.App., at Knoxville, July 5, 1990), *perm. to appeal denied*, (Tenn.1990); *Wilburn Hollis, Jr. v. Michael Dutton, Warden and State*, No. 87–165–III, 1988 WL 97264 (Tenn. Crim.App., at Nashville, September 22, 1988), *perm. to appeal denied*, (Tenn.1988).

be applied retroactively to cases on direct review, but that generally they should not be applied retroactively to criminal cases on collateral review." *Id.* at 303, 109 S.Ct. at 1071. He argued that it is generally sounder, in adjudicating collateral attacks, to apply the law prevailing at the time a conviction became final than it is to seek to dispose of cases on the basis of intervening changes in constitutional interpretation. *Id.* at 306, 109 S.Ct. at 1073. He identified only two exceptions to his general rule of nonretroactivity for cases on collateral review. Retroactivity may be applied to the post-conviction process when the new constitutional interpretation (1) places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," [2] and (2) when it requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" *Id.* at 307, 109 S.Ct. at 1073.

The second exception, under the Harlan theory, is to be reserved for watershed rules of criminal procedure. Those "new" constitutional rules which significantly improve the pre-existing fact-finding procedures are to be retroactively applied on habeas corpus. *Id.* at 311–12, 109 S.Ct. at 1075–76. The Court noted that the scope of the second exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313, 109 S.Ct. at 1077.

Even in the context of these federal decisions, however, states have been left free to develop their own retroactivity standards. *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.,* 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360 (1932). The Tennessee rule has been that newly announced state constitutional safeguards will be applied only to those cases either on trial or on appeal unless some compelling reasons exist for not doing so. *State v. Robbins,* 519 S.W.2d at 800. In post-conviction cases, the rule has been retroactively applied only when it enhances the integrity and reliability of the fact-finding process at trial. *Hellard v. State,* 629 S.W.2d 4, 5 (Tenn.1982).

Recently, in *Meadows v. State,* 849 S.W.2d 748, 754 (Tenn.1993), our supreme court held that retroactive application in the post-conviction setting was necessary only when "the old rule substantially impairs the truth-finding function at trial" and would tend to raise "serious questions about the accuracy of [the] guilty verdicts...." In that case, the court held that while *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989), did announce a new constitutional rule by which search warrants might be tested, it did not materially enhance the reliability of the fact-finding process at trial. *Meadows v. State,* 849 S.W.2d at 755.

The *Meadows* rule is similar to the federal test. If applied to these circumstances, the question is whether a *Sandstrom* error would "undermine the fundamental fairness that must underlie a conviction or seriously diminish the likelihood of obtaining an accurate conviction." *Teague v. Lane,* 489 U.S. at 315, 109 S.Ct. at 1078.

█ Using this standard, and especially in consideration of the holding in *Swanson* and its progeny, we must conclude that the *Sandstrom* rule, adopted by Tennessee in the *Bolin* decision, has retroactive application. In our view, the abolition of jury instructions shifting the burden of proof to the defendant on the issue of malice significantly enhanced "the integrity and reliability of the fact-finding process of the trial." *State v. Robbins,* 519 S.W.2d at 801; *see also Hellard v. State,* 629 S.W.2d at 5. The presumption of any essential element of an offense does, we think, tend to undermine "fundamental fairness."

We note that the United States Supreme Court did not retroactively apply the exclusionary rule to several cases on the subject. *See Hellard v. State,* 629 S.W.2d at 7, n. 2. Retroactive application was, however, extended to cases involving the right to counsel, the *Bruton* rule, and the jury-out right to contest the voluntariness of confessions. *Id.* In applying the rationale of those cases as

**2.** *See Williams v. United States,* 401 U.S. 667, 692, n. 6, 91 S.Ct. 1171, 1180, 28 L.Ed.2d 388 (1971).

well as the more restricted view in *Teague*, it appears that the *Sandstrom* rule, permitting the jury only an inference of malice from the use of a weapon, relates to the fact-finding mission at trial. Any deviation from the presumption of innocence tends to undermine procedural fairness. That comports with *Meadows* and would also be consistent with federal guidelines. Our conclusion, therefore, is that the *Sandstrom* rule meets the test of retroactive application and may be applied to convictions which became final prior to the decision's 1979 release.

■ Here, however, the error in the jury instruction was clearly harmless. The state's proof established actual malice. A fight broke out between the victim and the other inmates in his cell the day before the murder. The next morning, the cells were opened and at least two of the inmates provoked a fight with the victim. A participant in the fray, the petitioner fatally stabbed the victim with a sharpened spoon. Because these and other facts independently established the element of malice, we find that the presumptive instruction did not have a harmful effect upon the fact-finding process.

### D

As his next issue, the petitioner contends that the introduction of statements by co-defendants Clyde Robinson and Phillip Reisinger through the testimony of Deputy Sheriff Tom Tipton violated his Sixth Amendment right to confront and cross-examine witnesses. The trial court held that any constitutional violation had been waived by the petitioner's waiver of direct appeal.

■ Again, however, this right had not been recognized at the time of the petitioner's trial in 1965. Thus, he could not have "knowingly and understandingly" waived the issue within the meaning of the statute. Tenn.Code Ann. § 40–30–112(b)(1).

■ The statement of a non-testifying co-defendant implicating another defendant violates the constitutional rights of the latter in a joint trial. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). It is only when all connecting references to the defendant are redacted from the co-defendant's statement that the evidence may be admitted. *See Dorsey v. State*, 568 S.W.2d 639, 642 (Tenn.Crim.App.1978); *Taylor v. State*, 493 S.W.2d 477, 480 (Tenn.Crim. App.1972).

The first statement which the petitioner cites as objectionable was introduced through Deputy Tipton, who had questioned co-defendant Robinson prior to the swearing out of the original warrant. The first mention of this statement at trial came about during the cross-examination by counsel for the petitioner. When asked whether the statement led to the charges against the petitioner and other defendants, Deputy Tipton testified that some defendants that had been charged had not been implicated by Robinson. The Robinson statement was not made a part of the evidence nor was there any indication that the statement specifically implicated the petitioner.

■ There appears to be no prejudicial *Bruton* violation. Moreover, it has long been established that a party cannot take advantage of errors which he himself committed, invited, or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct. Tenn.R.App.P. 36(a); *State v. Garland*, 617 S.W.2d 176, 186 (Tenn.Crim.App.1981). Here, defense counsel elicited those portions of the statement that came into evidence. Thus, the petitioner cannot claim any violation of this right to confront.

The petitioner also complains about the testimony of Deputy Tipton surrounding a statement made by co-defendant Reisinger. The officer testified that the statement implicated a defendant other than Reisinger. On cross-examination, Deputy Tipton acknowledged that the statement did not implicate co-defendant Bill Townsend but never testified that Reisinger had accused the petitioner of involvement in the crime. The statement itself was not admitted as evidence.

■ There were a total of seven defendants on trial. Jurors might have inferred the statement incriminated the petitioner or other of his co-defendants. We can only speculate. But even if there was such an inference, the trial record includes over-

whelming evidence of the petitioner's guilt. In context, the petitioner did not suffer any prejudice by the testimony. Thus, any error by the reference to the statement was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

### E

Next, the petitioner contends that his trial counsel was ineffective by failing to raise and preserve certain of the constitutional grounds asserted in this petition: a fair cross-section of the community, a change of venue, and a jury instruction on malice. We disagree.

■ When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief.

■ Moreover, on appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn.Crim.App.1991); *Brooks v. State*, 756 S.W.2d 288, 289 (Tenn.Crim.App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. *Clenny v. State*, 576 S.W.2d 12, 14 (Tenn.Crim.App.1978), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2170, 60 L.Ed.2d 1050 (1979).

■ As previously noted, a fair cross-section of the community for the jury was not a constitutional prerequisite in 1965. Jury instructions permitting the presumption of malice by the use of a weapon had not yet been proscribed. In our view, counsel could not have been deficient by his failure to anticipate the subsequent rulings of the United States Supreme Court on either issue.

Thus we find no merit to these specific claims of ineffectiveness.

■ The petitioner's claim that his counsel was ineffective for failing to move for a change of venue also lacks merit. The trial court determined that trial counsel had made a strategic decision not to seek the change based on the violent reputation of the victim in Washington County. The trial court specifically held that trial counsel had been effective and had devoted adequate time and energy to the defense of the petitioner. Simply stated, the evidence does not preponderate against those findings. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See State v. Martin*, 627 S.W.2d 139, 142 (Tenn.Crim.App.1981). Moreover, the petitioner has been unable to establish any resultant prejudice. This record does not demonstrate that the trial court should have changed venue had the request been made.

Accordingly, the judgment denying post-conviction relief from the 1965 second degree murder conviction is affirmed.

## II. 1981 GUILTY PLEA

In May of 1979, the petitioner was indicted on one count of aggravated assault and one count of assault with intent to commit first degree murder. Counsel was appointed and on September 10, 1981, the petitioner entered a plea of guilt to aggravated assault. He was sentenced to two years in the Tennessee Department of Corrections. By agreement, the trial court held that the petitioner had already served the two-year sentence imposed. At the time of the plea, the petitioner's first degree murder conviction and its resultant death sentence was pending before the supreme court on direct appeal.

The petitioner makes two claims in challenging the validity of the plea:

(1) the guilty plea was not voluntarily, understandingly, and knowingly entered;

(2) his right to the effective assistance of counsel was violated when his attorney failed to adequately research the law and

failed to advise the petitioner of the ramifications of his guilty plea.

### A

As to his claim that the plea was not knowing, understanding, and voluntary, the petitioner admits that the trial court informed him of his right to a jury trial, his right to confront the state's witnesses, and his right against self-incrimination. Yet he asserts that he never waived these rights on the record.

In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court held that a guilty plea which is not knowing and voluntary violates due process. It ruled that every defendant must be advised of the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243, 89 S.Ct. at 1712. More recently, our supreme court held that guilty pleas accepted by trial courts which had substantially complied with the mandates of *Boykin* were valid. *State v. Neal*, 810 S.W.2d 131, 138 (Tenn. 1991). It held that while absolute, literal compliance with the advice to be given is not required, admonition of the substance of the *Boykin* mandates should suffice. *Id.* at 137. If a reviewing court determines that the failure to strictly advise of the *Boykin* rights "was harmless beyond a reasonable doubt," the conviction stands. *Id.* at 138 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)).

Initially, we conclude that the record supports the testimony that the petitioner knowingly and voluntarily waived his rights guaranteed under *Boykin*. Having reviewed the transcripts of the guilty plea and of the post-conviction proceeding, we also find that any error in failing to have the petitioner expressly respond that he understood each of his constitutional rights was harmless beyond doubt. This petitioner was no stranger to the legal process when he entered his plea. The record supports the finding that he was well aware of his basic constitutional rights when he chose to enter into the agreement with the state.

Next, the petitioner asserts that his plea was not knowing and voluntary because he did not know what he was pleading guilty to and because the state failed to place on the record any factual basis for the plea. The only confusion at the hearing related to the sentence, not the conviction. The petitioner was clearly aware of the charge of aggravated assault, but he was concerned that the trial court had ruled that he would be sentenced to a bit longer than two years. Ultimately, the state and the petitioner agreed on a two-year sentence, with the full term already having been served.

It further appears that the petitioner stipulated that there were sufficient facts to prove his guilt. The only reason there is no factual basis in the record is that the petitioner chose to exercise his Fifth Amendment right and refused to discuss the facts of the case. The petitioner testified at the post-conviction hearing that he pled guilty because he was in fact guilty of the charge.

Next, the petitioner contends that his guilty plea was not knowingly and voluntarily entered because his counsel failed to inform him that this plea could be used as an aggravating factor should his death penalty sentence, then on direct appeal, be reversed.

In *State v. McClintock*, 732 S.W.2d 268 (Tenn.1987), the supreme court held that defendants must be advised that a guilty plea could be used to enhance punishment for future convictions. *Id.* at 273. In so holding, the supreme court was acting under its supervisory authority over the lower courts; the right to be informed of the possibility of subsequent enhancement is not of constitutional dimension. Its abridgment does not qualify as an adequate ground for post-conviction relief. *See Housler v. State*, 749 S.W.2d 758, 760–61 (Tenn.Crim.App. 1988).

Moreover, this 1981 plea pre-dates *McClintock* by some six years. And *McClintock*, which underscores the need for trial courts to adhere to the requirements of Rule 11 of the Tennessee Rules of Criminal Procedure and the mandates of *State v. Mackey*, 553 S.W.2d 337 (Tenn.1977), before the acceptance of a guilty plea, also teaches that the mandate has no retroactive application:

This decision is to be applied through the pipeline approach, that is, to the litigants at bar, to all actions pending on the date this decision is announced, and to all causes of action arising subsequently.

*State v. McClintock,* 732 S.W.2d at 274.

### B

The petitioner also claims that he received ineffective assistance of counsel. At the time of the submission hearing, the petitioner's appeal from his first degree murder conviction and death sentence was pending in the Tennessee Supreme Court. Counsel in this 1981 proceeding did not read the Tennessee death penalty statute before the petitioner entered his plea nor did he advise the petitioner of the effect of his plea should the death penalty sentence be reversed. When the petitioner's murder conviction was remanded for a new sentencing hearing, the jury found this assault conviction to be an aggravating circumstance in resentencing the petitioner to death by electrocution.

At the evidentiary hearing, trial counsel testified that he knew the petitioner's death penalty case was on appeal to the supreme court. He admitted that he did not review the death penalty statute and made no attempt to advise the petitioner of the possible consequences of the plea of guilt to aggravated assault. He testified, however, that he would have advised the petitioner to do exactly the same thing even if counsel had known about the death penalty statute. He further testified that the petitioner got an excellent deal in the plea bargaining process, there was a strong likelihood of conviction, and there was a good chance the petitioner would get a greater sentence had the case gone to trial.

The petitioner testified that his trial counsel never advised him that this guilty plea could be used in a new sentencing hearing if the death penalty was reversed. He related that he would not have pled guilty if he had been properly advised. Yet the petitioner also testified that he pled guilty because he was guilty of the charge. He stated that he had not been looking for a deal at the time; instead, he pled guilty because he felt sympathy for the victim and just wanted to get the charges out of the way. The petitioner acknowledged his admission to the police shortly after the arrest that he had shot the victim.

The trial court held that counsel had been effective. It ruled that at the time of the plea in 1981, the law did not require advice of enhancement possibilities in future proceedings.

■■■ As previously indicated, when a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below the standard range of competence. Second, he must show that the deficiencies "actually had an adverse effect on the defense." *Strickland v. Washington,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d 674. As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Relying on *Teague v. State,* 772 S.W.2d 932 (Tenn.Crim.App.1988), the petitioner submits that counsel was ineffective for failing to investigate and advise the petitioner of the consequences of the guilty plea. In *Teague,* the defendant was convicted of murder and sentenced to death. While this conviction was on appeal, the state approached the defendant about pleading guilty to a lesser offense on another murder charge. The defendant asked counsel what effect, if any, a plea of nolo contendere would have on his first murder conviction if it was remanded. Counsel advised the defendant that it would have absolutely no effect and the defendant entered a plea based on this advice. Later, when the defendant's murder case was remanded for a new sentencing hearing, the jury used the second conviction as an aggravating factor in sentencing him to death.

This court found that counsel's advise was "clearly erroneous and, as a consequence, the services rendered and the advice given the defendant fell well below 'the range of competence demanded of attorneys in criminal cases.'" *Id.* at 936. This court held that the defendant had nothing to gain by entering

the plea since counsel had "almost assured" him that the supreme court would reverse his murder conviction. *Id.* at 939. Therefore, there was no reasonable probability that the defendant would have entered the plea absent counsel's erroneous advice, and the prejudice prong of *Strickland* was satisfied. *Id.* at 941.

The state asserts that this case is distinguishable on the facts. The state points out that this conviction preceded the supreme court's opinion in *McClintock, supra,* and secondly, the petitioner's counsel gave no advice whatsoever about potential effects on the death penalty case. The state argues that the defendant had affirmatively relied on incorrect advice in *Teague* before entering his plea whereas no advice at all had been supplied here. And thus, this petitioner had not relied upon any representations by counsel. The state submits that the plea agreement here was advantageous; it argues that the plea in *Teague* was not.

 In cases involving claims of inadequate advice, courts have generally agreed that the failure of counsel to inform a defendant of the direct consequences of a guilty plea amounts to ineffective assistance of counsel. On the other hand, a failure to advise of the collateral effects of the plea does not. *See, e.g., United States v. Del Rosario,* 902 F.2d 55, 59 (D.C.Cir.) (Failure to advise defendant of collateral effect of deportation not ineffective assistance), *cert. denied,* 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). *But see, e.g., Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir.1988) (Gross misadvice concerning parole eligibility can amount to ineffective assistance).

 The distinction between collateral and direct consequences "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Torrey v. Estelle,* 842 F.2d 234, 236 (9th Cir.1988). This rule has been applied in holding that the failure to advise a defendant of the potential enhancement to other sentences is collateral and thus does not impact the voluntariness of the plea. *See United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir.1990) (citing *Wright v. United States,* 624 F.2d 557, 561 (5th Cir.1980)). In *United States v. Brownlie,* 915 F.2d 527, 528 (9th Cir.1990), the court held that the "possibility that the defendant will be convicted of another offense in the future and will receive an enhanced sentence based on an instant conviction is not a direct consequence of a guilty plea."

More significantly, this rule has been applied to determine the voluntariness of a plea later used as an enhancement for the death penalty. In *King v. Dutton,* 17 F.3d 151 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2712, 129 L.Ed.2d 838 (1994), the defendant had been bound over to the grand jury for first degree murder in another case at the time he pled guilty to a separate charge. He was not advised that his plea could be used as an aggravating circumstance if the grand jury returned an indictment for first degree murder and the state sought the death penalty. The court held as follows:

> A conviction's possible enhancing effect on subsequent sentences has been held to be merely a collateral consequence of a guilty plea, about which a defendant need not be advised, even when there was a pending investigation into the charge upon which the subsequent sentence was based. *See United States v. Brownlie,* 915 F.2d 527, 528 (9th Cir.1990); *United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir.1990). Courts also have held that a defendant need not be advised that a conviction based on a guilty plea can be used in a subsequent prosecution resulting from a pending investigation. *See United States v. Campusano,* 947 F.2d 1, 5 (1st Cir.1991); *United States v. Jordan,* 870 F.2d 1310, 1317–18 (7th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989).

*Id.* at 153–55.

 Any failure of counsel to advise as to any collateral consequences of a plea does not, under these authorities, fall below the range of competence demanded of attorneys in criminal cases. Misadvice on the issue might have warranted relief; and, while a fine distinction, silence by counsel does not. In short, a sin of commission might merit relief while the sin of omission does not.

Moreover, *McClintock* was the first case in this state to suggest that defendants be advised of enhancement possibilities of a plea. It was decided some six years after the plea at issue here. In 1981, courts were not advising defendants about the enhancement possibilities of their guilty pleas. While the petitioner's counsel might have anticipated the ruling in *McClintock,* we certainly cannot lay blame for the failure to do so.

Further, we find that the petitioner has not demonstrated prejudice: that but for his counsel's failure to research the death penalty statute and inform the petitioner of the potential consequences of his 1981 plea on his death penalty appeal, he would not have entered a guilty plea. Although the facts of the aggravated assault are not set forth in the record, it is apparent that the petitioner confessed his guilt of aggravated assault to police. His trial counsel testified that the probability of conviction was overwhelming and that the petitioner would most likely have received a greater sentence than that imposed. The petitioner testified that he pled guilty because he was guilty of the crime and felt badly for the victim. Had he been convicted at trial, which was a practical certainty, the aggravated assault conviction could have been used as an aggravating circumstance in the subsequent death penalty resentencing. Under these circumstances, it is highly unlikely that knowledge of the possible collateral consequences of his plea would have changed his ultimate decision to accept the plea bargain.

### III. GUILT PHASE OF 1979 DEATH PENALTY CASE

In 1979, the petitioner was convicted of first degree murder for the shooting death of Junior Adams. Adams, who would have been a witness in the petitioner's aggravated assault case, was found with ten separate wounds caused by four to five shots. *State v. Adkins,* 653 S.W.2d 708, 710 (Tenn.1983). The petitioner raises three issues concerning the guilt phase of his trial:

(1) whether he was denied his constitutional right to be presumed innocent by a jury instruction on "malice" which shifted the burden of proof;

(2) whether his constitutional right to be tried by a fair cross-section of the community was violated; and

(3) whether he was denied his right to effective assistance of counsel.

#### A

First, the petitioner contends that the trial court provided jury instructions on malice which unconstitutionally shifted the burden of proof from the state to the petitioner in violation of the rule in *Sandstrom, supra.* In response, the state claims the petitioner has waived his right to raise this issue. As indicated, waiver applies only if the petitioner "knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn.Code Ann. § 40–30–112(b)(1). The waiver defense was not considered by the trial court during the post-conviction proceeding.

Recently, a panel of this court ruled in *Charles Walton Wright v. State,* No. 01C01–9105–CR–00149, slip op. at 34, 1994 WL 115955 (Tenn.Crim.App., at Nashville, April 7, 1994), *perm. to appeal denied,* (Tenn.1994), that the claim of waiver by the state for the first time on appeal could "defeat substantial justice if there was potential merit … to a claim of constitutional wrongdoing and the parties proceeded in the trial court without litigating or intending to litigate the issue of waiver." The court noted, however, that if the substantive claim had no merit, a remand would be unnecessary. *Id.*

This state's first acknowledgment of the rule in *Sandstrom* came about in *State v. Chavis,* 617 S.W.2d 903, 908 (Tenn.Crim.App. 1980) (Error to instruct jury to presume that person intends ordinary consequences of voluntary act). *Sandstrom* was decided by the United States Supreme Court two and one-half months after the defendant's conviction in 1979. Here, counsel for the petitioner filed a brief with the supreme court on October 3, 1980, some 14 days before the *Chavis* opinion was filed. It does not appear that the issue of waiver was considered below at the post-conviction hearing. Moreover, there

is no indication that the petitioner "knowingly and understandingly" failed to present it in any prior proceeding. Tenn.Code Ann. § 40–30–112(b)(1). Thus, we will consider the issue on the merits.

■ In *Sandstrom*, the United States Supreme Court held that jury instructions, which can be interpreted as a conclusive presumption or shift the burden of persuasion to the defense, violate the defendant's constitutional rights to due process. 442 U.S. 510, 522–24, 99 S.Ct. 2450, 2458–59, 61 L.Ed.2d 39. Here, the petitioner contends that the trial court administered instructions on malice which shifted the burden of proof from the state to the petitioner in violation of his constitutional rights. The trial court provided the following instructions as to the element of malice:

> For you to find the defendant guilty of murder in the first degree, the state must have proven beyond a reasonable doubt:
>
> (1) that the defendant unlawfully killed the alleged victim:
>
> (2) that the killing was malicious; that is, that the defendant was of the state of mind to do the alleged wrongful act without legal justification or excuse. If it is shown beyond a reasonable doubt that the alleged victim was killed, the killing is presumed to be malicious in the absence of evidence which would rebut the implied presumption.

■ In determining whether a jury instruction meets constitutional muster, courts must ascertain whether the challenged charge creates a mandatory presumption or a permissive inference. *See Francis v. Franklin*, 471 U.S. 307, 313–14, 105 S.Ct. 1965, 1970–71, 85 L.Ed.2d 344 (1985). A mandatory presumption violates due process because it shifts the burden to the defendant. A permissive inference, however, does not violate the constitution because the state still must prove facts from which an element such as malice might be reasonably inferred.

In *State v. Bolin*, 678 S.W.2d 40 (1984), our supreme court held that a jury charge to the effect that the use of a deadly weapon raised a presumption of malice unless rebutted by other facts and circumstances did not unconstitutionally shift the burden of proof; the court distinguished the instruction from that given in *Sandstrom* due to the "words of the presumption, the immediate context in which they appear, and the overall context of the jury instructions." *Id.* at 42. The trial court made repeated references to the defendant's presumption of innocence and the state's burden of proof and then concluded that "no reasonable jury could have interpreted the challenged instruction as mandatory or conclusive or as shifting to the defendant the burden of persuasion on the element of malice." *Id.* at 44. *See also State v. McKay*, 680 S.W.2d 447, 451 (Tenn.1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1412, 84 L.Ed.2d 795 (1985). In *State v. Martin*, 702 S.W.2d 560, 562 (Tenn.1985), our supreme court acknowledged the sufficiency of the evidence for a premeditated, first degree murder conviction but noted that the evidence was "somewhat close" on the element of malice, reversed the conviction, and remanded for a new trial. The jury instruction on malice was identical to that provided here; it did not further define the term. Another section of the charge in *Martin* stated that "the presumption could be rebutted by either direct or circumstantial evidence...." *Id.* at 563.

■ At the post-conviction hearing here, the trial court found that the jury instructions as a whole could not have been reasonably construed to shift the burden of persuasion to the defense. The holding in *Martin* would, however, indicate otherwise. We are unable to find any significant difference in the instructions and, because the issue is primarily one of law rather than fact, we are not bound by the findings of the trial court.

■ The court also found, however, that even if the instruction was erroneous under *Sandstrom*, the proof of guilt was so overwhelming that the error would have been harmless. After a careful review of this record, we agree with that conclusion.

A number of witnesses linked the petitioner to the shooting. An eyewitness saw the petitioner's vehicle drive away from the crime scene at the approximate time the victim was slain. During his interrogation, the petitioner told Detective Taylor that he

"didn't like the snitching little s.o.b. but I didn't kill him either." *State v. Adkins,* 653 S.W.2d at 712. The motive for the killing was apparent. Unlike *Martin,* the issue on the element of malice does not appear to have been close.

### B

The petitioner next asserts that his rights under both the United States Constitution and that of Tennessee were violated when he was tried by a jury that did not proportionally represent the major population groups of Washington County, Tennessee. Again, the petitioner points out the absence of women in the venire from which his jury was selected. And, once again, the state contends that the petitioner has waived his right to raise this issue by failing to object to the jury venire prior to trial. Because, however, waiver was not litigated in the trial court, we have considered the claim on its merits.

The United States Supreme Court has held that a male has standing to challenge the constitutionality of the exclusion of women from jury service. *Taylor v. Louisiana,* 419 U.S. 522, 526, 95 S.Ct. 692, 695–96, 42 L.Ed.2d 690 (1975). In *Taylor,* the Court further held that the systematic exclusion of women is violative of the right to a petit jury selected from a representative cross-section of the community and guaranteed by the Sixth Amendment right to a jury trial. *Id.* at 531–35, 95 S.Ct. at 698–700. Petit juries actually chosen, however, are not required to mirror the community and otherwise reflect the various distinctive groups in the population. *Id.* at 538, 95 S.Ct. at 701–02.

In *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), the Supreme Court set forth a three-pronged test for determining whether a jury was properly selected from a fair cross-section of the community:

(1) that the group alleged to be excluded is a "distinctive" group in the community;

(2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

This test was first applied by this court in *State v. Nelson,* 603 S.W.2d 158, 162 (Tenn. Crim.App.1980), and later by our supreme court in *State v. Buck,* 670 S.W.2d 600, 610 (Tenn.1984).

Certainly, the first prong of this test is met here in that women are a "distinctive" group in the community. Of equal importance is that the petitioner has demonstrated that the representation of women in the venire from which his jury was selected was neither fair nor reasonable. Men make up 49% of Washington County's population. Yet 61% of the jurors called in for petitioner's trial were male. The petitioner has failed, however, to show that this underrepresentation was due to systematic exclusion of women in the jury-selection process.

In *Taylor,* the petitioner was able to point to a particular Louisiana constitutional and statutory requirement that systematically excluded women from the jury-selection process. 419 U.S. at 524. The petitioner in *Duren* was able to demonstrate that a large discrepancy had occurred in every venire for a period of nearly a year. The facts supported a determination that underrepresentation of women was systematic or inherent in the particular jury-selection process utilized. *Duren v. Missouri,* 439 U.S. at 366, 99 S.Ct. 664, 58 L.Ed.2d 579. The proof here simply does not rise to that level.

### C

Next, the petitioner contends that he was denied his right to effective assistance of counsel when trial counsel (1) failed to object to the court's jury instruction on malice and failed to preserve this issue on direct appeal; (2) failed to object to the venire or to preserve the issue on appeal; and (3) failed to offer any evidence on behalf of the petitioner at the suppression hearing.

The petitioner was represented at trial and on direct appeal by two attorneys appointed by the court. At the conclusion of the evidentiary hearing on the petition for post-conviction relief, the trial court found that

the attorneys visited the crime scene, interviewed witnesses and relatives, and regularly conferred with the petitioner in the formulation of a viable trial strategy. It concluded that there was no breakdown in the adversary process, that the result was reliable, and that counsels' conduct fell within the wide range of "reasonable professional assistance."

In order to prevail on grounds of ineffective assistance of counsel, the petitioner was, of course, not only required to establish that the performance of his counsel was deficient but that the deficiency resulted in some prejudice. Because we have determined that the jury instruction error was harmless and the venire did not violate constitutional principles, the petitioner was not prejudiced by either of his first two claims. And, while he had a right to effective assistance of counsel on first appeal, see Evitts v. Lucey, 469 U.S. 387, 396–97, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821, reh'g denied, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985), the petitioner has failed to show that the results might have been different for any of the reasons alleged. Because the petitioner could not have prevailed anyway, it made no difference that counsel failed to preserve these issues on appeal.

Thus, the only claim of substance left for our conclusion is whether the petitioner was denied the effective assistance of counsel at the hearing on his motion to suppress. He alleges his counsel failed to introduce any evidence but has not indicated in this appeal why that might provide a basis for relief.

An issue may be waived when a defendant fails to articulate reasons to support a conclusory statement. Tenn.R.App.P. 27(a)(7); State v. McKay, 680 S.W.2d 447, 454 (Tenn.1984), cert. denied, 470 U.S. 1034, 105 S.Ct. 1412, 84 L.Ed.2d 795 (1985). And while it may be true that counsel failed to present witnesses at the suppression hearing, that does not mean that counsel was ineffective. Our own review of the transcript of the hearing does not help. We see no reason to find counsel ineffective at that stage of the proceeding. Certainly, the petitioner failed to prove the element of prejudice. Unless the record demonstrates the evidence at issue should have been excluded at trial, the petitioner is not entitled to relief. Thus, we agree with the trial court's conclusion that counsels' conduct fell within the wide range of "reasonable professional assistance."

## IV. 1985 RE–SENTENCING HEARING

The state appeals the trial court's finding that the petitioner was ineffectively assisted by his counsel at the sentencing phase of the first degree murder trial. More specifically, the court ruled that counsels' failure to either challenge the constitutionality of the petitioner's two prior convictions or to investigate, develop, or offer any mitigating proof at the sentencing hearing qualified as ineffective assistance. Thus, the trial court granted a new sentencing hearing. In this appeal, the state asserts that the evidence preponderates against these findings.

As indicated, a post-conviction petitioner must first establish that the services were deficient and then show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2067. If unsuccessful on either of the two prongs, the petitioner is not entitled to relief on this ground.

Furthermore, the trial court's findings of fact and conclusions of law are given the weight of a jury verdict. This court is bound by those findings of fact unless the evidence contained in the record preponderates against these findings. See Butler v. State, 789 S.W.2d 898, 899 (Tenn.1990); Teague v. State, 772 S.W.2d 932, 934 (Tenn. Crim.App.1988).

In this instance, the petitioner was represented at the third sentencing hearing by two attorneys appointed by the trial court. The trial court acknowledged that one of the attorneys had been disbarred sometime after this 1985 proceeding on matters unrelated to this case. The other attorney testified that he had investigated possible mitigating factors while his co-counsel's responsibility was to investigate aggravating factors. While co-counsel had been able to get a larceny conviction excluded from the sentencing hearing, counsel testified at the evidentiary hearing that he did not know what investigation his

co-counsel did in the way of research on the petitioner's two other prior convictions.

As a part of his preparation for the sentencing hearing, counsel spoke extensively with the petitioner, the petitioner's sister and mother, several of his friends, and an official at the Washington County Jail. Among other things, he learned that the petitioner's father, an alcoholic, had been very abusive towards the petitioner. Counsel sought a mental examination of the petitioner to determine whether he might have qualified as insane but did not request a psychiatric background and personal history evaluation which might have been used as mitigating evidence or as a means to gather such evidence. *See State v. Richard Odom, a/k/a Otis Smith,* No. 02C01–9305–CR–00080, 1994 WL 568433 (Tenn.Crim.App., at Jackson, October 19, 1994).

Despite the depth of his investigation, counsel chose not to use any of the witnesses he had interviewed. He claimed that evidence of the petitioner's early experiences of child abuse from an alcoholic father or his own alcoholism would have allowed the state to submit as evidence other of his violent acts or details of his prior convictions. Because the petitioner's first degree murder conviction was returned by a previous jury, counsel believed that the jury convened in 1985, charged only with determining the propriety of the death penalty, would be less likely to return a verdict of guilt the less proof they heard. Counsel also explained he did not present evidence of the petitioner's good behavior in prison because he feared opening the door for the state to prove the specific facts underlying his prior second degree murder conviction. The record demonstrates that the petitioner's counsel failed to file a motion to limit questionable state proof. Counsel made no attempt to determine the validity of possible mitigation testimony. In consequence, the jury heard no evidence whatsoever about the petitioner's social background, psychiatric or psychological condition, or post-incarceration behavior.

In order to satisfy the prejudice requirement of the *Strickland* test, the petitioner introduced testimony at the post-conviction hearing from an inmate counselor and a dea-

con in the Catholic church. Both had personal knowledge of the petitioner's behavior in prison. Each testified that they had not been interviewed by trial counsel prior to the 1985 sentencing hearing. Indications are that their testimony might have been helpful. A records custodian from the Tennessee Department of Corrections verified that the petitioner had not had any disciplinary problems while in prison between 1979 and 1985.

Dr. William Wood, a psychiatrist, also testified at the post-conviction hearing. Based upon interviews with the petitioner, the petitioner's family, and a review of the petitioner's records, Dr. Wood made the following observations:

[T]he two things that really stood out were the extreme nature of the physical abuse that he apparently encountered as a child without reason, and the second being the pattern both in the father and then in his life[long] alcohol use and of alcohol being associated with the physical violence. What we—what we know from studies that have been done, from the clinical experiences is that children who grow up in families where there is a tremendous amount of parental violence have a much greater likelihood of themselves being violent. And when this is coupled with alcohol and alcohol use and in—I think in Mr. Adkins' use of alcohol the pattern was that it was without his control, that in a sense that if he had one or two drinks that he would go on to intoxication. And so he's a compulsive alcoholic. And I think those—those patterns were important in determining some of the things that he has done in his adult life.

Dr. Wood testified that the petitioner's violent nature was due to his social background. He described the petitioner's chances of rehabilitation as good.

The trial court found that counsel had been deficient during the 1985 sentencing hearing for several reasons: (1) by failing to investigate two prior convictions which were used by the state as aggravating factors at the sentencing hearing; (2) by failing to fully investigate available mitigating evidence; (3) by assuming that a Washington County jury would not sentence someone to death be-

cause it had not heard the facts submitted in the guilt phase of the trial; and (4) by lack of experience in capital cases:

> Under our law, with the state having shown two aggravating circumstances and the defendant having shown no mitigating circumstances, the jury had no choice but to return a verdict of death. In the opinion of this Court, a decision made by [counsel] not to place into evidence any mitigating evidence by reason of his belief that no Washington County jury would impose the death penalty without having heard proof of the crime is not within the range of competence demanded of attorneys practicing in the criminal courts of this state. Counsel's decision does not constitute a tactical choice when that choice requires a jury to return a sentence of death.

Based on the mitigating proof presented at the post-conviction hearing, the trial court also found that the petitioner had "shown ample evidence concerning petitioner's childhood, background, psychiatric and psychological examination results, all of which a jury could have considered in mitigation to the death penalty."

■■■■ Initially, we hold that any collateral attacks upon the prior convictions would have been fruitless. The state, therefore, is correct in its contention that the validity of the second degree murder and the aggravated assault convictions precludes any finding of ineffectiveness on this ground. We cannot agree, however, that the evidence preponderates against the trial court's finding that counsel had been deficient by failing to adequately investigate and offer mitigating proof and that there was a reasonable likelihood that the deficiency affected the results of the 1985 proceeding. *See Cooper v. State,* 847 S.W.2d 521 (Tenn.Crim.App.1992).

■■■■ In *Cooper,* the court held that "[i]t is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction." *Id.* at 531 (quoting A.B.A. Standards for Crimi-

nal Justice (2nd ed.), The Defense Function § 4–4.1) (emphasis in original). The comments to this section of the standards provide as follows:

> The lawyer also has a substantial and important role to perform in raising mitigating factors both to the prosecutor initially and to the court at sentencing. This cannot effectively be done on the basis of broad general emotional appeals or on the strength of statements made to the lawyer by the defendant. Information concerning the defendant's background, education, employment record, mental and emotional stability, family relationships, and the like, will be relevant, as will mitigating circumstances surrounding the commission of the offense itself. Investigation is essential to fulfillment of these functions.

And, in *State v. Melson,* 772 S.W.2d 417, 421 (Tenn.), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989), our supreme court held that counsel must be "required to exert every reasonable effort on behalf of a client both in the investigation and in the trial of a case."

■■■■ The United States Supreme Court has held that mitigating evidence is relevant to sentencing hearings and should be heard. *See California v. Brown,* 479 U.S. 538, 541, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); *Eddings v. Oklahoma,* 455 U.S. 104, 113–15, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982). Yet there is no legal requirement and no established practice that an accused must offer any evidence at a sentencing hearing. *State v. Melson,* 772 S.W.2d at 421. In fact, in many death penalty cases, counsel has properly seen fit not to offer any evidence at the penalty phase. *Id.* Here, however, when the state presented proof of two aggravating circumstances and counsel for the petitioner offered no mitigating evidence, the jury had little choice but to impose the death sentence. In 1985, Tenn.Code Ann. § 39–2–203(g)[3] provided as follows:

> If the jury unanimously determines that at least one statutory aggravating circum-

---

**3.** Tenn.Code Ann. § 39–2–203 was repealed by 1989 Tenn.Pub.Acts ch. 591 and is now codified

at Tenn.Code Ann. § 39–13–204.

stance or several statutory aggravating circumstances have been proved by the state beyond a reasonable doubt, and said circumstance or circumstances are not outweighed by any mitigating circumstances, the sentence shall be death.

We find that the trial court acted within its authority when it determined that counsel for the petitioner was ineffective by failing to introduce mitigating evidence. Counsel's decision not to introduce mitigating evidence without taking adequate steps to determine the existence of mitigation testimony was, as the trial court concluded, likely based on inexperience rather than a sound strategic choice. *Cf. Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638, *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987). Because the record does not preponderate against the finding by the trial court, we find no merit to the state appeal.

## V. CONCLUSION

We affirm the trial court's denial of post-conviction relief as to the second degree murder conviction, aggravated assault conviction, and the guilt phase of the first degree murder conviction. We also affirm the trial court's determination that counsel was ineffective for failing to adequately investigate and present mitigating evidence and require a new sentencing hearing. We hold, however, that the petitioner was not prejudiced in the 1985 proceeding by counsel's failure to challenge the petitioner's prior convictions for second degree murder and aggravated assault.

Accordingly, the judgment is affirmed as modified and the sentencing phase of the first degree murder conviction is remanded to the trial for hearing.

ADOLPHO A. BIRCH, Jr., J., not participating.

JOE D. DUNCAN, Special Judge, concurs.