IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2005

## BRIAN L. WOODS  v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C01-137      Lee Moore, Judge**

_____

**No. W2004-02220-CCA-R3-PC  - Filed August 31, 2005**

_____

The Appellant, Brian L. Woods, appeals the Dyer County Circuit Court's denial of his petition for post-conviction relief.  On appeal, Woods argues that he was denied his Sixth Amendment right to the effective assistance of counsel.  After review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Timothy Boxx, Dyersburg, Tennessee, for the Appellant, Brian L. Woods.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Procedural Background**

In April of 2002, the Appellant was convicted by a Dyer County jury of the second degree murder of Lamar Johnson.  He is currently serving a twenty-four year Department of Correction sentence as a result of this conviction.  On direct appeal, this court found no error and affirmed the Appellant's conviction and sentence.  *State v. Brian L. Woods*, No. W2002-01831-CCA-R3-CD (Tenn. Crim. App. at Jackson, Oct. 6, 2003).

The proof at trial, as recited on direct appeal, established:

On February 12, 2001, around 7:10 p.m., the Appellant "was walking on Wilson Circle," on the west side of Dyersburg, when "he noticed a maroon car, and a gentlemen in the car . . . fired a gun at him and . . . struck him in the back."  The

Appellant advised officer Mark Reynolds that Devon Wiggins, a/k/a "Dee-Dee," was the man who shot him. The Appellant wanted to sign a warrant against Wiggins and proceeded to the clerk's office to do so. The Appellant did not indicate that any other individual was involved in the shooting at this time.

According to Reynolds, while he and the Appellant were at the clerk's office, "I did notice a small hole in the hood of the [Appellant's] jacket. After I got to looking at the hole in the hood, it's pretty close to where his injury was on his back. I began to examine the hole and recovered a round from the hole." Although there was no broken skin, the Appellant had a severe "dime-sized" bruise on his back with "a little blood to the surface of the skin" and "a little swelling around" the wound. He declined medical treatment. After the Appellant left the clerk's office, he told Kelvin Taylor, the co-defendant in this case, that two persons known as "Dee-Dee" and "Mar-Mar," a/k/a Lamar Johnson, the victim in this case, had shot at him.

That same evening, the Appellant went to the east side of town to the home of Karen Smith. At some point during the evening, he obtained a SKS assault rifle. According to Sierra Smith, the daughter of Karen Smith, when the Appellant saw Johnson, he said, "I'm fixin' to go get that nigger," left the porch, and went behind the house. As Johnson was standing in front of a neighboring home, the Appellant fired at least twelve shots at the victim. The victim was struck twice, once in the back and once in the left hip, and died as a result of his wounds. Upon examination of the body, a pistol was found underneath Johnson's body near his feet. The weapon's safety was set, the magazine was full, and it appeared that the weapon had not been recently fired. At trial, the Appellant testified that he shot Johnson because he believed Johnson was shooting at him and "they was constantly aggravating me." Additionally, subsequent ballistics tests revealed that the bullet recovered from the Appellant's jacket was not fired from the pistol found under Johnson's body.

*Id.*

The proof at the post-conviction hearing established that it was Wiggins who fired the bullet which lodged in the Appellant's jacket. Wiggins was indicted for aggravated assault and pled guilty to assault prior to the Appellant's trial.

In April of 2004, the Appellant filed a *pro se* petition for post-conviction relief alleging that he received the ineffective assistance of counsel. An evidentiary hearing was held on July 30, 2004, and the post-conviction court denied relief by written order on August 18, 2004. This appeal followed.

**Analysis**

On appeal, the Appellant asserts that trial counsel's representation was deficient because counsel failed to call Devon Wiggins to testify at trial. To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id*.

At the post-conviction hearing, trial counsel testified that his initial trial strategy was to inform the jury that Wiggins had plead guilty to assaulting the Appellant and that he intended to call Wiggins as a witness to establish that Wiggins and Johnson were the aggressors who set the fatal events into motion. Trial counsel contacted Wiggins, and Wiggins told him, "you don't want me as a witness . . . because I'm gonna say that . . . [the Appellant] shot at me and MarMar [Johnson] first down there on the circle and that's why we shot back at him and the bullet ended up in [the Appellant's] coat." At that point, trial counsel decided against calling Wiggins as a witness. Trial counsel testified, "I'm not gonna put any witness in the stand who's gonna put a gun in my client's hand when our whole theory of the case was delayed self-defense."

At the post-conviction hearing, Devon Wiggins was called as a witness and verified that the Appellant had shot at him and the victim after the victim had "almost ran [the Appellant] over." Wiggins explained that several days later, the two encountered the Appellant again, and the Appellant shot at them a second time. At that point, Wiggins testified, "I jumped out with the gun I had and shot back."

In dismissing the petition, the post conviction court concluded:

. . . [T]he decision of whether or not to call Mr. Wiggins as it appears to the Court in any event is a tactical decision of, dealing with your trial tactics and quite frankly I think that it was a very good tactical decision based on what we've heard from Mr. Wiggins today.

The Petitioner has failed to prove ineffective assistance of counsel. This was not - - failure to call this witness was not a defective performance on the part of Mr. Lanier. And there's obviously the proof from Mr. Wiggins today would show no prejudice even if it had been.

We find nothing in the record to preponderate against the findings of the post-conviction court. Questions concerning the credibility of witnesses, the weight and value given to their testimony, and the factual issues raised by the evidence are to be resolved by the trier of fact. *Henley*, 960 S.W.2d at 579. We will not reweigh or reevaluate the evidence or substitute our inferences for those drawn by the post-conviction court. *Id.* at 579-80. The record establishes that the post-conviction court accredited trial counsel testimony that Devon Wiggins would not have been a favorable witness for the defense. Moreover, the record establishes that at the Appellant's trial, counsel informed the jury that Wiggins had pled guilty to assaulting the Appellant through stipulations with the State and was able to introduce Wiggins' prior criminal history through other witnesses. Thus, trial counsel was in large part successful in presenting his defense without incurring the residual damage of Wiggins' testimony. In this regard, we note that the Appellant was indicted for first degree murder and convicted of second degree murder. We agree that neither deficient performance nor prejudice has been established.

**CONCLUSION**

Based upon the foregoing, we affirm the dismissal of the petition for post-conviction relief by the Dyer County Circuit Count.

_____
DAVID G. HAYES, JUDGE