# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2008

## JEROME BOND v. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Shelby County
### No. 03-06593     Chris Craft, Judge

### No. W2008-00319-CCA-R3-PC  - Filed March 9, 2009

The petitioner, Jerome Bond, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief.  Following his convictions for first degree felony murder and especially aggravated robbery, the petitioner was sentenced to consecutive sentences of life imprisonment and twenty-five years.  On appeal, the petitioner argues that he was denied his Sixth Amendment right to the effective assistance of counsel, specifically arguing that trial counsel was ineffective for failing to call an alibi witness at trial.  Following review of the record, the denial of post-conviction relief is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN and CAMILLE R. MCMULLEN, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Jerome Bond.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

The relevant underlying facts of the case, as established on direct appeal, are as follows:

> At approximately 8:30 a.m. on March 19, 2003, the victim, Dennis Bell, left his residence with the intention of driving to his grandmother's house to visit friends. Later, Patrol Officers Jeremy Wells and Sean Sanders of the Memphis Police Department responded to an "armed-party call" at the LaPaloma Apartments. The caller reported that there were three armed men at the scene. When they arrived, the officers saw the [petitioner] and Jerry Mason flee from the parking lot. The officers

ultimately found the two men hiding underneath a vehicle and took them into custody. At that point, the officers turned their attention to a parked car occupied by the victim and John Davis Streeter. Streeter, who was on the ground near the passenger side of the vehicle, had been shot in the shoulder. The victim, who was found slumped in the open window of the driver's side of the car, had suffered a fatal gunshot wound to the left side of his face. After calling for assistance, Officer Wells found a .22 caliber long rifle where he had first seen the [petitioner]. Officer Sanders found a .380 caliber pistol and a bag of cocaine where the men were hiding just before their arrest. Other officers found a bag of cocaine in the victim's car and a .380 caliber shell casing at the scene. At trial, Streeter testified that the victim, who had been a friend since childhood, picked him up at approximately 10 p.m. on the night of the shooting and then drove into the LaPaloma parking lot. He recalled that the [petitioner] approached their vehicle and informed the victim that someone was looking for him. Streeter testified that he then heard two gunshots. Shortly thereafter, he saw a police car, which was traveling towards their vehicle, make a u-turn. He stated that the victim, who had blood "shooting out" of his head, drove in the direction of the police car before the vehicle was brought to a halt. Streeter insisted that he was not intoxicated at the time of the offense and that he had never known the victim to deal in drugs.

. . . .

Jerry Mason, who had been charged with aggravated robbery and facilitation of a felony as a result of this incident, testified for the state. He claimed that he purchased marijuana from the [petitioner] on a regular basis and on the night of the offense agreed to "watch [his] back" while he made an illegal drug purchase. According to Mason, a third individual, who he knew only as "Peewee," drove the two men to the LaPaloma Apartments. He testified that the [petitioner], who possessed a small, black automatic pistol, provided him with a rifle. Mason stated that he hid behind a building as the [petitioner] approached the vehicle driven by the victim. He contended that after about twenty seconds, he heard a gunshot and, thinking that the [petitioner] had been shot, responded by firing a shot at the victim's vehicle. Mason testified that it was only when he saw the [petitioner] running in his direction that he realized the [petitioner] had shot the victim. He claimed that he dropped his rifle and fled but was quickly apprehended by the police.

Detective Marcus Berryman of the Memphis Police Department Crime Response Unit, questioned the [petitioner]. At trial, he presented a written statement from the [petitioner] wherein the [petitioner] acknowledged his plans to rob the victim. In the statement, the [petitioner] admitted shooting both the victim and Streeter but insisted that it was accidental. According to the statement, Mason had provided the [petitioner] with a loaded pistol and the third individual involved in the

-2-

incident went by the name "ToJo". The [petitioner] confirmed that he had taken seventy-five dollars from the victim, all of which was recovered by the police.

. . . .

Steve Scott, a forensic scientist with the Tennessee Bureau of Investigation, examined the .380 caliber pistol and the .22 caliber rifle that were found at the scene. He stated that the pistol, which was in operating condition, included a safety feature and determined that a "trigger-pull test" did not indicate any likelihood of a misfire. Agent Scott confirmed that the .380 caliber shell casing found at the scene was fired from the pistol.

*State v. Jerome Bond*, No. W2004-02557-CCA-R3-CD (Tenn. Crim. App., at Jackson, Dec. 8, 2005). Following a jury trial, the petitioner was found guilty of first degree felony murder and especially aggravated robbery. He was subsequently sentenced to consecutive terms of life imprisonment and twenty-five years for the respective convictions. The convictions and sentences were later affirmed by a panel of this court on direct appeal. *Id*.

The petitioner filed a timely *pro se* petition for post-conviction, asserting that he was denied his Sixth Amendment right to the effective assistance of counsel. Following the appointment of counsel, an amended petition was filed. An evidentiary hearing was held at which the petitioner and the two attorneys who had represented him at trial testified. The petitioner's lead trial counsel was the first to testify and stated that he had been appointed to represent the petitioner in this case following the preliminary hearing stage. Trial counsel stated that he filed discovery motions in the case and received open file discovery from the State. He further testified that he had a private investigator appointed in the case and that the investigator interviewed the surviving victim and available witnesses. Trial counsel also stated that he filed a motion to suppress the petitioner's statement to police, as well as the photograph of the petitioner holding the bloodstained money, but the motion was denied. Because the petitioner confessed to being the shooter and was arrested at the scene of the crime, counsel proceeded to trial on a theory that the crime was not first degree murder, claiming there was no intent to rob but rather it was a drug deal gone wrong. Trial counsel stated he had no recollection of the petitioner ever informing him of the possibility of Angela Hankins' testifying that it was Mason who had supplied the weapons rather than the petitioner. However, trial counsel testified that, in light of the facts of the case, particularly the petitioner's acknowledgment that he was the shooter, in his opinion, who supplied the weapons would not have affected the outcome of the case.

Next, the petitioner testified and stated that after he reviewed discovery in the case, he informed trial counsel that Angela Hankins, his live-in girlfriend, could testify that Mason had supplied the guns rather than the petitioner. According to the petitioner, trial counsel informed him that he did not see that the statement would affect the outcome of the case and made no attempts to contact her. The petitioner acknowledged that Hankins was the only possible witness he had in support of his defense.

-3-

Finally, a second attorney who also assisted in the petitioner's defense was called to testify at the hearing by the State. According to this attorney, both he and trial counsel, after reviewing the facts of the case and the discovery materials with the petitioner, came up with the best possible defense. According to him, they had a good working relationship with the petitioner. He also testified that he did not recall the petitioner ever mentioning Angela Hankins to either himself or trial counsel. He testified that if her testimony was that Mason has supplied the weapons, while it might have been used to impeach Mason, it did not go to the ultimate issue of guilt in the case.

After hearing the proof presented, the post-conviction court, by written order, denied the petitioner's request for post-conviction relief. This timely appeal follows.

**Analysis**

On appeal, the petitioner has raised the single issue of ineffective assistance of counsel. To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id*. at 461. "[A] trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, conclusions of law are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id*.

-4-

Though multiple instances of ineffective assistance of counsel were alleged in the petition, on appeal, the petitioner contends only that the post-conviction court erred in denying relief because of trial counsel's failure to call an alibi witness, specifically Angela Hankins. According to the petitioner, Hankins "would have served as a crucial alibi witness at trial" and would have testified that the co-defendant Mason brought the guns to the home she shared with the petitioner on the night of the shooting. The petitioner contends that this would have shown that it was the co-defendant, not the petitioner, who was primarily responsible and would have limited the petitioner's culpability, resulting in a different outcome.

In denying relief with regard to this issue, the post-conviction court found as follows:

> The petitioner testified that his live-in girlfriend saw the co-defendant, Jerry Mason, deliver the guns to him that were to be used in the robbery. He stated that her testimony would have contradicted Mason's testimony at trial that the petition[er] was the one who provided the guns, and may have resulted in a lesser sentence. This allegation fails for three reasons.
>
> First[], Ms. Hankins was not produced at the hearing on this petition. To establish prejudice, a petitioner must (1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness. *State v. Black*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Assuming *arguendo* that the attorneys would have located her (the petitioner testified that he mentioned her name in conversation to his attorneys only once – her name was not mentioned in any pre-trial discovery or in his statement to the police), there was no offer of proof by her at the hearing as to what her testimony would have been, or whether or not it would have been material.
>
> Secondly, the defense in this case was that the petitioner's gun went off by accident, that there was no intent to rob, but only to buy drugs, and that Mason was there only to "back up" the petitioner as he bought drugs from the victim. This, essentially, was what Mason testified to as a State witness at trial. The State's theory at trial was that the petitioner committed the robbery to get money to buy drugs. If the jury had believed this aspect of Mason's testimony, that the petitioner did not intend to rob, they might not have found the petitioner guilty of murder during perpetration of a robbery or of especially aggravated robbery. If Angel Hankins had been called as a witness and her testimony about the origin of the guns had been believed by the jury, this may have eroded Mason's credibility about helpful testimony of an alleged "drug deal gone bad."
>
> Thirdly, the fact of whether or not Mason or the petitioner brought the guns to the petitioner's house prior to the murder is immaterial. Both guns were introduced as exhibits at the trial, and the gun found under the car with the petitioner,

which he admitted firing, was shown through ballistic evidence to be the one matching spent shell casings found at the scene. This allegation fails for lack of proof as to deficient performance or prejudice to the [petitioner].

Review of the record reveals nothing to preponderate against these findings made by the court. As noted by the post-conviction court, the petitioner's claim must fail because of his own failure to produce Ms. Hankins at the post-conviction hearing. Because of this failure, nothing in the record, except the petitioner's own testimony, establishes what, if anything, Ms. Hankins would have testified to. In these cases, it is the petitioner's burden to produce the witness at the hearing, without which prejudice cannot be established. *Black*, 794 S.W.2d at 757. Moreover, despite the fact that the petitioner argues otherwise, Ms. Hankins was not an alibi witness, even assuming that she testified as the petitioner stated she would. Her testimony would have in no way provided the petitioner with an alibi for the time of the crime, especially in light of the fact that he admitted to committing the shootings and was arrested at the crime scene with the victim's money in his pocket. As testified to at the hearing, Ms. Hankins, assuming arguendo that she testified as the petitioner claimed she would, would have at most been an impeachment witness. Both of the petitioner's attorneys specifically testified that her testimony would not have been helpful to the defense. Her testimony, as found by the post-conviction court, was not material to the issue of guilt and could, in fact, have hampered the asserted defense. As such, the petitioner has failed to establish that he was denied his right to the effective assistance of counsel.

## CONCLUSION

Based upon the foregoing, the Shelby County Criminal Court's denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-