IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 14, 2009

## CLEMMIE RHYAN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-08934     Lee V. Coffee, Judge**

**No. W2008-00975-CCA-MR3-PC  -  Filed October 9, 2009**

The petitioner, Clemmie Rhyan, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief. The petitioner, convicted of second degree murder, a Class A felony, is currently serving a twenty-two-year sentence in the Department of Correction. On appeal, he contends that he was denied the effective assistance of counsel at trial. Specifically, he contends that trial counsel was ineffective by failing to: (1) investigate the case and locate witnesses for the defense; and (2) present evidence, including thorough cross-examination of State witnesses supporting the theory of self-defense. Following review of the record, we find no error in the denial of the petition and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Autumn B. Chastain, Memphis, Tennessee, for the appellant, Clemmie Rhyan.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; William L. Gibbons, District Attorney General; and Tiffani Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The relevant underlying facts of this case, as established on direct appeal, are as follows:

This case relates to the [petitioner's] shooting and killing the victim, Kenneth Suiter. Sergeant Larry Colburn of the Memphis Police Department testified that at 6:44 p.m. on December 13, 1998, he was dispatched to the Metro Market Grocery Store at 1378 North Hollywood Street. He saw the victim lying on his back in a grassy area that was just south of the store's parking lot. The area was littered with

empty bottles and was separated from the parking lot by a concrete retaining wall that was about thirty inches tall. The victim had been shot once in the chest and was dead. Sergeant Colburn saw an empty pack of cigarettes on the ground next to the victim's left hand, empty wine and beer bottles next to the victim's right arm, and an empty whisky bottle under the victim's right knee. Sergeant Colburn also saw a kitchen knife, partially covered by trash, on the ground near the victim. He photographed the scene, took measurements, and collected the knife, bottles, and cigarette pack. On cross-examination, he said that he did not know if fingerprints were recovered from the items he collected or if someone moved the body before he arrived.

Lawrence Yancy testified that in December 1998, he worked nights at a Target store. He said that on December 3, he got out of bed about 4:30 p.m. and walked to the Metro Market in order to get a beer before he went to work. He said that before he went into the store, he sat on the retaining wall outside the store for a few minutes. He said that he saw the [petitioner] and the victim walking and talking together and that the men did not appear to be arguing. He said that he could tell the [petitioner] and the victim had been drinking because they were staggering. He said he went into the store, bought a beer, and went outside and sat on the retaining wall. He said that the victim also was sitting on the wall and that the [petitioner] was standing in front of the victim. He said that he was about an arm's length from the [petitioner] and the victim and that they were arguing. He said that the argument escalated and that the victim cursed the [petitioner]. He said the victim told the [petitioner], "[You] can go on and pull out that rusty ass knife. I'll take it from you." He said the [petitioner] replied, "[You] ain't going to take shit from me." He said that the [petitioner] shot the victim with a handgun and that the victim fell backward into the grassy area. He said that he was afraid and ran away. He said that as he was running, he heard the victim say, "[Please] don't shoot me again."

Mr. Yancy testified that he ran to his stepdaughter's house and told her what had happened. . . .

Mr. Yancy testified that he had not been drinking when he saw the [petitioner] shoot the victim. He acknowledged that the retaining wall was a popular place for people to gather and drink. He said that although the victim was cursing at the [petitioner], he did not see anything in the victim's hands and the victim never got off the retaining wall or made any gestures toward the [petitioner] before the [petitioner] shot the victim. . . .

On cross-examination, Mr. Yancy testified that when he first arrived at the Metro Market and sat on the wall, someone named Big Daddy also was at the wall. He said that when the [petitioner] shot the victim, he and Big Daddy ran away. He acknowledged that in his statement to police, he said that the [petitioner] "just

clicked due to being cursed." He denied telling the police that the [petitioner] said to the victim, "You ain't got nothing, you ain't going to take shit from me, trick. You ain't got nothing but a rusty ass knife. I'll take the knife from you and kick your ass with it." Instead, he said the victim made those statements to the [petitioner].

. . . .

Tarlisha Carey, Lawrence Yancy's stepdaughter, testified for the defense that she lived one block from the Metro market and that on December 3, 1998, Mr. Yancy came to her house and told her that someone had been shot. She said that earlier that day, she and Mr. Yancy had been smoking crack and drinking beer in her home. On cross-examination, she acknowledged telling a prosecutor that she had been taking drugs on December 3 and did not remember what had happened that day. . . .

*State v. Clemmie Rhyan*, No. W2001-03019-CCA-R3-CD (Tenn. Crim. App. at Jackson, Jan. 27, 2003). The petitioner was indicted by a Shelby County grand jury for second degree murder and was convicted as charged. He was subsequently sentenced to a term of twenty-two years, as a violent offender, in the Department of Correction. The petitioner then filed a direct appeal to this court challenging: (1) the sufficiency of the evidence; (2) that the court refused to instruct the jury on self-defense; and (3) that his sentence was excessive. *Id*. The conviction and sentence were affirmed. *Id*.

Afterward, the petitioner filed a timely *pro se* post-conviction petition asserting, among other grounds, that he was denied his Sixth Amendment right to the effective assistance of counsel. Following the appointment of counsel, an amended petition was also filed. A hearing was held on the matter at which trial counsel and appellate counsel were called to testify. While the petitioner did not take the stand, he did introduce affidavits from three individuals, which were entered without objection from the State. The first was from Jerry Boyd, who indicated that he was not in the area when the incident occurred and that he had no information about the crime. The second was an affidavit from Tarlisha Carey, who also was a defense witness at trial, in which she stated that she was not present during the incident. The final affidavit was from Lawrence Yancy, who was also a witness at trial. In the affidavit, Yancy indicated the following: he had never previously seen the victim; he heard the victim tell the petitioner that he could take a rusty knife from him and kill him; the petitioner was known for carrying a knife; and both men were drunk.

Trial counsel testified that she was involved in the petitioner's case for almost two years prior to trial. She testified that she received and shared all discovery materials with the petitioner. She further stated that the only possible theories of defense were self-defense or to try for the reduced charge of voluntary manslaughter. She explained that the petitioner had no alibi and had admitted that he was present and that he committed the crime. He also stated that the victim was coming at him with a bottle. Trial counsel went on to note that either she or her investigator had interviewed and filed subpoenas for all possible defense witnesses of whom the petitioner had made them aware. Trial counsel described an intense and ongoing investigation to locate and interview witnesses,

which included multiple trips to the scene of the crime. She testified that even though more than fifteen attempts to locate or interview witnesses which would support the defendant's theory of self-defense were made, they were unable to locate any witnesses who would give testimony in support. Trial counsel went on to state that when she was at the crime scene, she observed that it was littered with debris and broken bottles. She was aware that certain pieces of evidence, including broken bottles and a knife, had been collected from the scene. However, she was unable to determine whether these items had been tested for fingerprints. She testified that she was unsuccessful in her attempt to elicit this information on cross-examination. She also indicated that she asked multiple questions to Yancy on cross-examination as to whether he had seen anything in the victim's hand, but that Yancy persisted that he had not.

After hearing the evidence presented, the post-conviction court determined that relief was not appropriate and denied the petition. This appeal followed.

**Analysis**

As an initial matter, the State asserts this appeal should be dismissed because the petitioner failed to file a timely notice of appeal. The State is correct that this petitioner failed to timely file his notice of appeal document within thirty days after the date of entry of the judgment appealed from, as the post-conviction court's order dismissing the petition was filed on April 1, 2008, and notice of appeal was filed on May 30, 2008, some fifty-nine days later. *See* Tenn. R. App. P. 4(a). However, we note that "[i]n all criminal cases, the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." *Id*. The State, however, asserts in this case that the "interest of justice" does not weigh in favor of waiving the timeliness requirement because the petitioner offers no explanation for the late-filed notice of appeal. However, this matter has previously been determined in this court, as an order was entered on May 29, 2008, which states that "it is in the interest of justice to waive the timely filing of the [petitioner's] notice of appeal." As such, we address the merits of the petitioner's argument.

On appeal, the petitioner raises the single issue of ineffective assistance of counsel. To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*, are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

The petitioner's argument for ineffective assistance of counsel centers around his allegation that trial counsel failed to locate and interview witnesses to the crime who could have supported the petitioner's theory of self-defense. He argues further that counsel's failure to investigate these potential witnesses led her to be unprepared to cross-examine State witnesses and resulted in his being deprived of his theory of defense, as evidenced by the trial court's failure to charge self-defense to the jury. He also asserts that trial counsel was deficient in her failure to procure fingerprint evidence from the beer bottles collected, which he asserts would have also been beneficial to the theory of the case. In denying relief on this issue, the post-conviction court made extensive findings of fact in its written order. The following was stated:

> Trial counsel interviewed and filed subpoenas for defense witnesses that the defendant had requested. Trial counsel conducted an intense and on-going investigation to locate and interview witnesses. [Trial counsel] testified that her investigators made over 15 attempts to locate and interview witnesses. [Trial counsel], visiting the crime scene three (3) or more times, could not find any witnesses who would admit to having witnessed this killing. [Trial counsel] testified at the hearing that "alibi was never a defense[.]" After an exhaustive search, [trial counsel] was unable to locate any witnesses who would support the [petitioner's] theory of self-defense.
>
>      . . . .
>
> . . .The petitioner failed to produce any witnesses at the evidentiary hearing that would have supported his unfounded allegations. . . . The petitioner was unable to demonstrate how further preparations by his trial counsel might have been helpful. The petitioner failed to provide this Court with any explanation as to how he was

prejudiced by the alleged deficiencies to call or locate witnesses at trial. [Trial counsel] reiterated at the evidentiary hearing that there were no other witnesses who could have been called for the [petitioner]. . . . This Court cannot speculate on what benefit the witnesses might have offered to the petitioner's case, nor may this Court guess as to what evidence further investigation might have uncovered. . . .

The trial record and the testimony at the evidentiary hearing clearly show that [trial counsel] located, interviewed and vigorously cross-examined all witnesses. The jury accredited the [S]tate's witnesses. . . . The petitioner failed to call any witnesses at the evidentiary hearing so that the post-conviction court could determine the credibility of the witnesses or the value of their testimony. The only proof presented at the evidentiary hearing by the petitioner consisted of affidavits of Lawrence [Yancy], Tarlisha Carey and Jerry Boyd. The affidavits were of no value to support the [petitioner's] claim of self-defense. This allegation is also without any merit.

. . . .

Even had those witnesses been presented during the post-conviction proceeding, this Court finds that the result would not have been different. This Court finds that trial counsel properly investigated the petitioner's case and was adequately prepared for the trial of the petitioner's case. The proof, as accredited by the Court of Criminal Appeals and by the Jury, is overwhelming against the petitioner. . . .

The court accredits the testimony of trial counsel. . . .

. . . .

[With regard to the allegations that trial counsel failed to adequately present the petitioner's theory of self-defense,] [t]here was absolutely no proof presented at the evidentiary hearing to substantiate these allegations; therefore, this issue is without merit. The [petitioner] gave a statement of admission in which [the petitioner] admitted shooting the victim from a distance. Trial counsel received discovery from the State of Tennessee. There is no evidence presented that any prints were ever attempted to be processed from bottles located at the crime scene. Proof at the evidentiary hearing revealed that no "useable prints" were ever processed from a knife located near the victim's body. The petitioner complains that no prints were ever lifted and/or compared from bottles that were located near the victim's body.

This court finds that the petitioner has failed to demonstrate that a reasonable probability exists the [petitioner] would not have been prosecuted or convicted if potentially favorable DNA analysis of any evidence would produce results that would undermine confidence in the outcome of the prosecution. . . . Notwithstanding

consideration of "potentially" favorable DNA testing results, the reviewing court cannot ignore the existing evidence.

. . . .

The evidence is uncontroverted that the deceased had been drinking bottles of beer and was extremely intoxicated. Trial counsel testified at the evidentiary hearing that "fingerprints on the bottle would not have made a difference in this case" . . . as this is a known area for lounging and drinking beer in the neighborhood. The victim's prints would be expected to be on beer bottles located near the victim's body. The [petitioner] raised self-defense in a self-serving statement in which the [petitioner] attempted to minimize his killing of an unarmed victim. The only eyewitness at trial testified that the victim was unarmed and was shot while sitting on a retaining wall. Trial counsel testified at the evidentiary hearing that the victim's fingerprints on a beer bottle would not indicate self-defense as the [petitioner] left the scene and returned with a gun. Furthermore, trial counsel could not locate any witnesses to support the [petitioner's] claim of self-defense.

Review of the record reveals nothing which preponderates against these extensive findings. The petitioner contends that the post-conviction court's ruling is based solely upon its finding that he failed to establish prejudice based upon his failure to present witnesses at the evidentiary hearing. He contends that the affidavits he entered into evidence should have been considered in lieu of requiring that the witness actually be present to testify at the hearing. However, his argument is clearly misplaced, because it ignores that the post-conviction court's ruling specifically stated that the affidavits were considered and contained no beneficial information. We agree. Moreover, the argument further ignores that the post-conviction court specifically found that trial counsel was also not deficient. Thus, the petition failed to establish both prongs required under *Strickland*.

Trial counsel specifically testified at the post-conviction hearing that she actively investigated this case and attempted to find any possible witnesses who could support the petitioner's theory. As noted by the post-conviction court, more than fifteen attempts were made to locate witnesses, and no witnesses were found. Trial counsel further testified that she investigated all the names indicated by the petitioner as possible witnesses. The record indicates that trial counsel invested a considerable amount of time and skill in her representation of this petitioner and in her investigation and preparation for trial. She specifically testified that she received and reviewed discovery, discussed possible trial strategies with the petitioner, and met with the petitioner numerous times. Moreover, his contention that trial counsel failed to place the theory of self-defense properly before the jury is without merit. While trial counsel acknowledged that self-defense or pursuing the lesser included offense of voluntary manslaughter were the only viable trial strategies, she also noted that no specific evidence supporting the theory of self-defense was presented. Nonetheless, through her cross-examination of State witnesses, she attempted to put the defense before the jury. However, trial counsel was limited by the witnesses who were available and the testimony that they gave. As

did the post-conviction court, we conclude that the petitioner has not established that this was deficient performance.

Likewise, we cannot conclude that the petitioner established the prejudice prong, as he failed to produce witnesses who could have been discovered through a more thorough investigation and given favorable testimony at trial. As courts are not free to speculate as to what "possible" witnesses might have testified to, it is the petitioner's burden to put forth these witnesses at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As previously noted, the petitioner's argument with regard to the introduction of the affidavits is without merit, as they contained no information which would have benefitted his case. Moreover, his argument with regard to the testing of the beer bottles is also one of speculation. The post-conviction court found, and we agree, that even if the petitioner had established that the victim's prints were on the bottles, it would not have resulted in a different verdict as it was acknowledged that the victim was drinking beer in the area. Thus, the record fails to establish that the post-conviction court erred in denying relief.

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-