IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 26, 2010

**KENNETH C. DAVIS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Sevier County**
**No. 12973-II     Rex Henry Ogle, Judge**

---

**No. E2010-00022-CCA-R3-PC - Filed January 27, 2011**

---

The petitioner, Kenneth Clay Davis, appeals the Sevier County Circuit Court's denial of his petition for post-conviction relief. The petitioner was convicted of identity theft, a Class D felony, and driving after being declared a habitual motor vehicle offender, a Class E felony, and was sentenced, as a career offender, to an effective sentence of twelve years in the Department of Correction. On appeal, the petitioner asserts that the denial of the petition was error because: (1) his due process rights were violated by the State's failure to prove beyond a reasonable doubt that the offenses were committed before the return of the indictment; and (2) he was denied his Sixth Amendment right to the effective assistance of counsel. Following review of the record, we find no error in the denial and affirm the judgment of the Sevier County Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH, J., joined. NORMA MCGEE OGLE, J., not participating.

Rolfe A. Straussfogel, Sevierville, Tennessee, for the appellant, Kenneth C. Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; James B. (Jimmy) Dunn, District Attorney General; and Johnnie D. Sellars, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Procedural History**

The facts underlying the petitioner's convictions, as recited by this court on direct appeal, are as follows:

According to Officer [James] Roberts [of the Sevierville Police Department], on March 22, 2005, he stopped a vehicle for driving sixty-two miles per hour in a thirty-five mile per hour zone. Officer Roberts identified the [petitioner] as the driver of the vehicle. When Officer Roberts approached the vehicle, the [petitioner] identified himself as Mitchell L. Davis. Even though the [petitioner] was unable to produce a driver's license, he provided Officer Roberts with a social security number as identification. The [petitioner] did not appear to be under the influence of alcohol or drugs.

Officer Roberts testified that the car also held a female passenger in the front seat and a male passenger in the back seat. Officer Roberts stated that Mitchell Davis's driver's license was revoked, but that he decided to issue the [petitioner] a misdemeanor citation and release him.

Sometimes later that morning, Officer Roberts responded to a call about an incident at the Wal-Mart in Sevierville involving the [petitioner]. When Officer Roberts arrived on the scene, he learned that the [petitioner], who had previously identified himself as Mitchell Davis, was really Kenneth C. Davis. A check of the [petitioner's] driver's license number revealed that the [petitioner] was an habitual motor vehicle offender. Officer Roberts also discovered that Mitchell Davis was the [petitioner's] brother and that his social security number was one digit different from the [petitioner's]. When Officer Roberts observed the [petitioner] at Wal-Mart, he appeared to be under the influence of drugs.

Officer Roberts explained that when the blue lights on his patrol car are activated, an onboard video camera begins recording. When Officer Roberts was preparing to testify in front of the grand jury, he discovered that the video tape or video camera used during the [petitioner's] stop for speeding malfunctioned and that there was nothing on the tape. Officer Roberts attempted to watch the tape on two different VCRs, but there was nothing on the tape.

The [petitioner] testified in his own defense at trial. According to the [petitioner], Officer Roberts did not stop him for speeding, rather he and two other people were in the car and were already stopped in a parking lot at the Co-op when Officer Roberts approached the car and addressed him as "Mitchell." The [petitioner] stated that the officer asked him for his social security number and birth date. The [petitioner] claimed that he told the officer that he was illiterate and did not know his social security number. The

[petitioner] also claimed that he was sitting on the passenger side of the vehicle and never saw the officer activate his blue lights. The [petitioner] admitted that he was an habitual motor vehicle offender.

At the conclusion of the trial, the jury found the [petitioner] guilty of identity theft and driving after having been declared an habitual motor vehicle offender. After a sentencing hearing, the trial court sentenced the [petitioner] to twelve years as a career offender for identity theft and six years as a career offender for driving in violation of the habitual motor vehicle offender act. The trial court ordered the sentences to run concurrently, for a total effective sentence of twelve years.

*State v. Kenneth Clay Davis*, No. E2006-01459-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Apr. 30, 2007), *perm. app. denied* (Tenn., Aug. 13, 2007). A panel of this court affirmed the convictions of direct appeal. *Id*.

Thereafter, the petitioner filed the instant petition for post-conviction relief, asserting a myriad of complaints regarding trial counsel's performance at trial and that the State failed to prove that the charged offenses were committed before the return of the indictment. Post-conviction counsel was appointed, but no amended petition was filed as counsel felt that the petitioner's *pro se* petition was more than adequate. Subsequently, a post-conviction hearing was held at which arguments were presented and both the petitioner and trial counsel testified. First, the petitioner's appellate counsel presented argument with regard to the issue of whether the State had violated the petitioner's due process rights by failing to prove beyond a reasonable doubt that the charged offenses were committed prior to the return of the indictment. In the argument, counsel conceded that it was established that: (1) it was clear from the transcript that the officer testified to the dates the offenses were committed; (2) it was clear from the transcript that the trial made a statement on the record that the indictments would be sent to the jury room during deliberations following a lunch break; and (3) it was the general practice of the trial court to read the indictments to the jury. However, counsel pointed out that the reading of the indictment did not appear in the transcript of the trial. Moreover, he asserts that there was no definitive evidence that the indictment was introduced at trial or that the date of the return of the indictment was presented to the jury. The court ruled that the petitioner had failed to carry his burden of proof of the issue.

Next, with regard to the issue of ineffective assistance of counsel, the petitioner was called to testify. He testified that once his case "went to the grand jury it just went haywire after that. I don't understand. . . ." He related that while he was originally charged with criminal impersonation and violation of the habitual motor vehicle offender statute, the grand jury returned indictments for identity theft, false report, and violation of the habitual motor

vehicle statute. Trial counsel was only appointed to represent the petitioner at arraignment. Although he was not certain, the petitioner testified that he only remembered trial counsel visiting him in the jail on two occasions. He acknowledged that trial counsel informed him of the pending charges and explained them to him multiple times. However, he asserted that he "couldn't understand the identity theft" and informed trial counsel of this. Although he acknowledged that trial counsel again attempted to explain it, he stated that he was never able to understand it. The petitioner also testified that trial counsel "wanted [him] to plead guilty," but he refused.

The petitioner further testified that there were things that he thought trial counsel should have done but did not. He did not recall that trial counsel had raised an issue regarding the videotape at a motion hearing or questioned the officer regarding discrepancies. He further testified that he wanted trial counsel to talk to the two people who were with him in the car at the time of the offenses as possible defense witnesses. He acknowledged that he could not recall the female's name and that she was in Florida. He also did not know "Scotty's" last name and thought he was "back in Texas." Moreover, on cross-examination, he specifically acknowledged that he did not have phone numbers or addresses for these people prior to trial.

The petitioner stated that he "don't think [trial counsel] done her job." When asked to explain, the petitioner replied, "Because look where I'm at." At this point, the post-conviction court pointed out that a copy of a transcript of a motion hearing styled "Motion Regarding Videotape" was part of the record. The court noted that trial counsel had called the officer as a witness at that hearing and had "ask[ed] him all kinds of questions." At that time, the petitioner responded that he did not recall that specific hearing. The petitioner testified that he "felt that [trial counsel] could have possibly done better if she had raised more issues[.]" The petitioner further testified that he did not recall that the false report charge had been dismissed due to trial counsel's efforts at yet another motion hearing. When asked if there was anything that trial counsel did at trial that he did not want her to do, the petitioner responded, "Like I said, I can't read or write. I don't know if she done bad or what. The only thing I know is when I get these papers and the gentlemen [incarcerated with him] explains it to me. That's all I know. I'm illiterate."

Next, trial counsel stated that it was fair to say that the trial was basically a swearing match between the petitioner and the police officer at trial. She acknowledged that the petitioner had told her about the two possible witnesses, but the petitioner was unable to provide counsel with any specific information about them prior to trial. Through her own investigation, she attempted to find the female and did, in fact, determine her name and that she had been arrested on multiple occasions. However, based upon the information she received, trial counsel determined that the woman "had apparently left the state prior to this

-4-

case going to trial." Trial counsel related that she was never able to ascertain the identity of the male. She went on to note that the only other potential witness in the case was the petitioner's brother, whom she knew that the State intended to call. However, after speaking with Mitchell Davis, trial counsel felt that his testimony would be detrimental to the petitioner' case. As such, she agreed to stipulate to the fact that Mitchell Davis was a real person and what his social security number was, the facts the State were trying to adduce for Davis as a witness.

Trial counsel testified that she had two "lengthy" meetings with the petitioner at the jail and spoke with him during courtroom breaks at several appearances prior to trial. She also testified that she wrote him approximately fifteen letters in which she answered his questions or communicated plea offers to him. Trial counsel recalled that, "well in advance" of trial, the State filed a notice of intent to use the petitioner's prior convictions. She noted that she addressed the issue and that she managed to keep "out a good part of [the petitioner's] record," although not all of it. Trial counsel went on to testify that the petitioner insisted that he wanted to take the stand, so she was aware that his credibility would be at issue. She discussed this with the petitioner prior to trial, and she decided, as a tactical decision to ask the petitioner about his record on direct in order to lessen its impact with the jury.

Trial counsel also testified that she did not file a written request for lesser included offenses, but the issue was discussed with the court on the day of trial. With regard to the petitioner's contention that she should have requested a charge on fraudulent use of a driver's license, she testified that it was not a lesser offense, as no driver's license was used in this case. She also recalled filing a number of pretrial motions, including a motion to dismiss the indictment. Although the motion to dismiss with unsuccessful, trial counsel felt she had extensively litigated the issue. She further recalled filing and "extensively litigating" a pretrial motion regarding the police videotape. She also noted that the issue of the videotape was raised in the motion for new trial and on direct appeal.

In response to the claim that the petitioner felt she was unable to adequately represent him because she was representing thirty-six other clients at the same time, trial counsel testified that the number was probably closer to sixty. However, she testified that she did not think her case load impaired her ability to represent the petitioner. She noted that "I think he received better than adequate representation in this case. There was a lot of time and effort that went into the research on these motions in preparation for trial." She also testified that she had brought up every pertinent pretrial issue that the petitioner had brought to her attention.

After hearing the evidence presented, the post-conviction court made findings of fact

from the bench and issued a written order denying the petition. The petitioner has timely appealed that denial.

## Analysis

On appeal, the petitioner is challenging the denial of his petition for post-conviction relief. He submits that the post-conviction court erred in its denial because the record establishes that: (1) his due process rights were violated because the State failed to prove beyond a reasonable doubt that the offenses charged were committed before the return of the indictment as required by Tennessee Code Annotated section 39-11-201(a)(4); and (2) he was denied the effective assistance of counsel at trial. To succeed on a challenge of ineffective assistance of counsel, the petitioner bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). The petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id*. at 461. "[A] trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, conclusions of law are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id*.

## I. Indictment

The petitioner first asserts that he is entitled to post-conviction relief because the State failed to prove beyond a reasonable doubt that the charged offenses were committed before the return of the indictment, as required by Tennessee Code Annotated section 39-11-201(a)(4) (2006). He asserts that this alleged failure by the State violates his right to due process and is, therefore, cognizable in a post-conviction proceeding. The State responds that the petitioner has waived this issue by his failure to raise it in the trial court or on direct appeal. We agree with the State that, under the Post-Conviction Procedure Act, a ground for relief is waived if the petitioner "failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented," subject to two narrow exceptions which are not applicable here. T.C.A. § 40-30-106(g) (2006). We agree that this issue should have been raised in an earlier proceeding and is technically waived. However, because the post-conviction court addressed the issue, we will likewise briefly address the issue in the interest of completeness and finality.

We agree with the petitioner that Tennessee Code Annotated section 39-11-201(a)(4) requires that, in all crimes prosecuted, the State must prove beyond a reasonable doubt that "[t]he offense was committed prior to the return of the formal charge." The petitioner asserts that there is no evidence in the record to conclusively establish that the State complied with this requirement. He relies upon *State v. Brown*, 53 S.W.3d 264 (Tenn. Crim. App. 2000), in which this court remanded a defendant's case for new trial because, among other issues, the State failed to prove that the two charged offenses had been committed before the return of the indictment. In *Brown*, this court stated:

> While it seems obvious that no person would be indicted or otherwise formally charged with the commission of the offense of murder before the victim was actually killed, the legislature has chosen to require the State to prove that fact beyond a reasonable doubt. Our research has revealed no explicit rationale for such a rule, but we believe it may have arisen from the requirements concerning the content of indictments.

> The rue to be deduced from our cases is that, where there is no statute of limitations barring the offense, it is unnecessary to state the day, or even the year, but it is sufficient to aver generally that the offense was committed before the finding of the indictment; . . .

> . . . .

> Granted, this is an easy matter to prove. Generally, the first thing to

happen in a trial after the jury is sworn is that the indictment is read to the jury. . . . Our supreme court has stated that the reading of the indictment is an appropriate and proper procedure. . . . The indictment is not to be considered evidence of a defendant's guilt, . . . but we do believe the indictment itself can establish the date upon which it was returned. Thus, the reading of the indictment to the jury, coupled with evidence of when the offense was committed, would establish that the offense was committed prior to the return of the indictment. Also, the State could merely ask an appropriate witness whether the actions of the defendant constituting the offense occurred before the defendant was charged with that offense. This would satisfy the requirements of the statute as well.

*Brown*, 53 S.W.3d at 278-80. The petitioner notes that, in *Brown*, there was no evidence that the indictment was read to or shown to the jury and no witness was asked whether the offense occurred prior to the return of the indictment. He likens *Brown* to his case by stating that, while the officer testified regarding the date the offenses were committed, there is no definitive evidence that the indictment was read to the jury. In denying relief on this issue, the post-conviction found that the petitioner had failed to carry his burden of showing that the State failed to comply with the requirements. The court acknowledged that the trial transcript did not explicitly reflect that indictment had been read to the jury. The court noted, however, a portion of the transcript which reflected the following:

"This defendant is charged," as I said, "on identity theft and driving after having been declared an habitual motor offender." . . .

Now, it said, "An orientation has been presented to the jury, then the following proceedings were had to wit." And I certainly think part of that was left out [on the record]. I do think that. . . . [t]his Court is satisfied that it told them.

The court went on to note that it was the court's practice to read the indictment following the swearing in of the jury, a practice the court was legally required to do. Finally, the court referenced yet another portion of the trial transcript, which included the following statement: "At that time I will ask the bailiff to take the jury instructions, the indictments, and the exhibits from the jury room for the jury to see."

We must agree with the post-conviction court and conclude that the petitioner failed to show by clear and convincing evidence that the State failed to prove that the offenses occurred prior to the return of the indictment. The petitioner's reliance upon *Brown* is misplaced as his case is distinguishable. Here the inferences to be gained from a reading of

the transcripts and the comments made by the post-conviction court are that the indictment was read to the jury, although not transcribed, and that the indictment was sent with the jury during their deliberations. This is sufficient to establish the time frame of when the indictment was returned to the jury. Moreover, as pointed out by the State, the officer was asked "if the petitioner [was] taken to jail on the habitual motor vehicle offender violation and criminal impersonation '*which you subsequently charged him with*.'" The officer affirmatively responded to the question, which indicates that the petitioner was not charged with the crime until after its commission. As such, we must conclude that the petitioner is entitled to no relief.

## II. Ineffective Assistance of Counsel

Next, the petitioner contends that trial counsel provided ineffective representation during the trial. In the petitioner's brief, appellate counsel notes that the petitioner asserted multiple allegations of ineffectiveness by trial counsel, specifically: (1) failure to investigate and present witnesses to corroborate the petitioner's version of events; (2) failure to form a working relationship with the petitioner, prepare the petitioner for trial, and communicate adequately with him; (3) failure to request a jury instruction of what the petitioner asserts is a lesser included offense, namely, fraudulent use of a driver's license; (4) mistakenly and unnecessarily opening the door to the petitioner's prior convictions; and (5) laboring under a conflict of interest due to an excessive caseload which prevented trial counsel from providing adequate representation. We take from appellate counsel's statement that, "[i]n all candor to this Court, it is difficult for counsel to make non [sic] colorable arguments for several of these claims." Specifically, he references that the proof presented at the hearing basically negates the assertions with regard to the issue of trial counsel's failure to call and investigate certain witnesses, failure to request a lesser included offense instruction, and opening the door to the petitioner's criminal history. No arguments with regard to those issues are made in the brief, and the post-conviction court found that the petitioner had failed to establish the claims. We will not reevaluate the post-conviction court's findings in these circumstances, as the record more than sufficiently supports them.

Further, with regard to the assertion that trial counsel provided ineffective assistance because she was "overburdened" with other clients, appellate counsel also makes no argument other than that discussed *infra* and citing to Rule 1.7 of the Professional Rules of Conduct, which states that "a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client. . . ." As noted by the post-conviction court and acknowledged by trial counsel, the number of clients asserted by the petitioner was probably lower than the number actually represented by trial counsel at the time. However, trial counsel specifically testified that her representation of the petitioner was not affected by the other concurrent representations. The post-conviction

court obviously accredited that testimony, and it is not the province of this court to reweigh such determinations. Furthermore, the petitioner put forth no proof as to how these multiple representations affected trial counsel's performance. The petitioner has simply failed to carry his burden, as a mere assertion unsubstantiated by evidence does not entitle one to post-conviction relief.

Appellate counsel notes that the petitioner's "strongest claim regarding ineffective assistance of counsel lies in the fact that [the] [p]etitioner was uneducated, illiterate and did not fully understand the nature of the charges against him, did not understand the range of possible punishment as a Career Offender and did not understand the catastrophe that could result from his demand to take the stand to testify." The argument continues:

> Compounding these issues were the fact that his attorney, a public defender in a very busy judicial district, simply could not give the attention necessary to a defendant like [the petitioner.] It is not that the ineffectiveness arose from pure incompetence as it is clear from the record that trial counsel put up a valiant defense raising several pre and post trial motions and argued the case through appeal. Again, in all candor, this counsel cannot think of anything practice wise that trial counsel failed to do other than have the time to make sure [the petitioner] fully understood the import of his situation. Had counsel had the time to fully discuss this with [the] [p]etitioner as required by Rule 1.4 of the Rules of Professional Conduct, he may have made a different decision, including accepting a plea offer instead of taking this matter to trial, which, needless to say, would have affected the outcome of the trial.

From a reading of this argument, we conclude that, again, the petitioner is basically asserting that trial counsel's only failure in her representation was that she was too busy representing other clients to adequately represent the petitioner who, because of his intelligence level, required more time and explanation of relevant matters. As noted *supra*, we have already concluded that the petitioner has failed to carry his burden with regard to his claim that trial counsel provided deficient representation because she was representing multiple clients at the time. Trial counsel specifically testified that, although she might have been able to use "more bells and whistles" in representing the petitioner had her caseload been smaller, she felt that she had more than adequately represented the petitioner, specifically stating that a great deal of work had gone into her preparation and research for the case.

We must agree with the post-conviction court's findings that trial counsel provided representation in this case that "exceeded constitutional mandates." The record reflects that trial counsel met with the petitioner in two lengthy sessions, saw him at pretrial appearances

for motions in the case, and wrote him approximately fifteen letters answering the petitioner's questions and conveying plea offers. The petitioner conceded that, on multiple occasions, trial counsel attempted to clarify his understanding of the nature of the charges. The record further reflects that trial counsel investigated the case and vigorously litigated issues pretrial. The petitioner is not entitled to post-conviction relief in this case.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE